## JAMES H. HEALEY and Another v. STEELE CENTER CREAMERY ASSOCIATION.[1]

October 27, 1911.

Nos. 17,116—(17).

**De facto corporation — findings.**

Defendant was organized in 1892 as a co-operative association. *Held,* that the findings of fact show an attempt to organize a corporation under chapter 29, Laws 1870, and a user as a corporation under such attempted incorporation, and therefore show that defendant was a de facto corporation under such law.

[1]Reported in 133 N. W. 69.

**Statutory powers — curative act.**

> Laws 1909, c. 298, changed defendant from a de facto corporation to a de jure corporation; but Laws 1870, c. 29, under which it was organized, still controls as to the powers of defendant and of its officers, directors, or managers, and as to the rights of stockholders in such corporation.

**Same — shareholders.**

> The provision in said chapter 29, Laws 1870, that "no person shall be allowed to become a shareholder in such association except by the consent of the managers of the same," is valid, and applies to defendant. Such provision is not repealed by R. L. 1905, § 2863.

Action in the district court for Steele county to compel the transfer of a certificate of stock upon the books of defendant corporation to plaintiff Healey, and to allow him to vote at the meetings of defendant. The answer, among other allegations, set up that defendant adopted a rule on December 28, 1907, among others, that shares of stock as then held should not be transferable off the farm on which the owner then resided, and that the alleged transfer from plaintiff Smith to plaintiff Healey was an attempt to avoid that rule.

The case was tried before Buckham, J., who made findings and as conclusions of law found that plaintiff Healey, by purchase of the certificate of stock from plaintiff Smith, became a shareholder in defendant and entitled to a transfer of the stock to him upon the books of defendant, and to all the privileges of membership, and that it was not necessary to secure the consent of the managers of defendant as a condition to such membership. From an order denying defendant's motion for a new trial, it appealed. Reversed with directions to amend the conclusions of law and enter judgment in favor of defendant.

*Leach & Reigard,* for appellant.

*J. A. & A. W. Sawyer,* for respondents. ·

BUNN, J.

Defendant is a co-operative association organized in 1892 located in Steele county. On June 19, 1909, plaintiff Smith was the owner of one share of stock in the association. On that date he assigned and delivered his certificate to plaintiff Healey, who demanded of

defendant that it transfer the stock to him on the books of the association, which defendant refused to do. Thereupon plaintiffs brought this action to compel defendant to transfer said share of stock on its books to plaintiff Healey, and to recognize Healey as a stockholder. The case was tried and resulted in a decision in plaintiff's favor, granting the relief asked. This appeal is from an order denying defendant's motion for a new trial.

The ultimate question before us is whether the conclusions of law are justified by the findings of fact. The precise question is: Do the findings show that defendant was a corporation either de jure or de facto, organized under chapter 29, p. 50, Laws 1870? This law is entitled "An act in relation to the formation of co-operative associations," and contained this provision: "No person shall be allowed to become a shareholder in such association except by the consent of the managers of the same." If defendant was organized under this law plaintiffs were not entitled to the transfer of the stock on defendant's books, as the managers refused their consent to plaintiff Healey's becoming a stockholder. If, however, defendant was a corporation de jure or de facto under some other law of the state, the conclusions of the trial court were correct.

The problem is to be solved by looking to the findings to discover what was done in organizing the association and in conducting its business, and by looking to the laws in force at the time the association was formed.

Prior to February 18, 1892, residents of Somerset, in Steele county, more than seven in number and of lawful age, associated themselves together under the name of "The Steele Center Creamery Association," for the purpose of manufacturing butter and cheese from whole milk at actual cost at a plant to be located in the town of Somerset, and adopted articles of agreement and by-laws. The articles of agreement begin in this way:

"We, whose names are hereunto subscribed and whose residences are within the county of Steele in the state of Minnesota, do hereby associate ourselves together as a *co-operative association under the laws of the state of Minnesota,* to which end we have adopted the following constitution." Then followed the "articles."

Article 1 gives the name and place of business. Article 2 specifies the object of the association; article 3, the officers, the time of their election, and their term of office. It is provided that the officers shall be a president, vice president, secretary and treasurer, and three trustees. Article 4 defines the duties of the officers, and provides for the furnishing of milk by members, the creation of a sinking fund, the payment of running expenses, and the division of the net receipts among the members who have furnished the milk. The board of directors were authorized to borrow $3,000 to be used in erecting and furnishing a creamery building, the amount borrowed to be paid out of the sinking fund. Article 5 provided that the members of the association should furnish all the milk from the number of cows subscribed by each, and that patrons not members might furnish milk by agreement with the board of trustees. The association was to receive all milk so furnished, manufacture it into cheese or butter, and sell the product. Of the money so received, after deducting such a number of cents per hundred pounds of milk as should be agreed upon by the association in its by-laws or otherwise for the sinking fund, and deducting the expenses, the remainder was to be distributed as provided by article 4. Article 6 provided that each member should have one vote, and authorized the admission of new members and the withdrawal of members, as provided by the by-laws.

By-laws were adopted. The "articles of agreement" were filed for record in the office of the town clerk of the town of Somerset February 18, 1892, but were never in fact recorded. They remained in the office of the town clerk until 1896, when they were taken from such office by the secretary of the association and never returned.

After executing and filing these articles of agreement, the persons forming the association borrowed $3,000, and with that sum erected a creamery building and commenced to manufacture butter. Ever since such time the business has been carried on in good faith by the association at the same place, through officers and a board of directors elected from time to time by the stockholders at their meetings. On the formation of the association, certificates of stock, so

called, were issued to its members, one share of stock being issued for each cow whose milk was furnished. No capital stock of the association was ever subscribed for or paid into the treasury, except as those who furnished milk, nonmembers as well as shareholders, contributed to the sinking fund by the setting aside of five cents for each one hundred pounds of milk furnished. The nonmembers who thus contributed to the sinking fund never received any return there-for. Both plaintiffs were original members of the association, furnished milk to its creamery, and contributed to the sinking fund, which was used in paying for the creamery plant.

Prior to 1905, out of the money in the sinking fund, the defendant erected and furnished a new creamery, and has ever since carried on its business in said creamery, which is worth $6,000 and is the only property of such association. In 1905 defendant took up its certificates of stock, and issued in lieu thereof new certificates, assigning one share to each member. Plaintiff Healey furnished milk to the creamery until shortly before the erection of the new plant, when he withdrew from the association, ceased to be a member thereof, and did not furnish milk until in June, 1909, when he commenced again, and has ever since continued to deliver milk, receiving as pay his pro rata share of the receipts for butter after deducting the expenses and the amount specified for the sinking fund. Plaintiff Smith had furnished milk to the association and contributed to its sinking fund at all times prior to March 16, 1905. On that date defendant issued to him a share of stock. He continued to deliver milk until June 19, 1909, when he sold and assigned his share of stock to plaintiff Healey, who has ever since continued to deliver the milk from all his cows to the creamery. Healey purchased the certificate with full notice that defendant would not admit him as a shareholder.

In refusing to transfer the stock the directors of defendant acted in good faith, claiming and believing that they had a right to do so under the laws of the state of Minnesota regulating the association

What were the laws of the state of Minnesota under which such an association might have been incorporated? We have seen that the title of chapter 29, p. 50, Laws 1870, is "An act in relation to

the formation of co-operative associations." We may state here that there was no other law that purported to relate to "co-operative associations." Section 1 of the act provides that "seven or more persons of lawful age, inhabitants of this state, may, by written articles, of agreement, associate themselves together for the purposes of trade, or for carrying on any lawful mechanical, manufacturing, or agricultural business within this state," and that, when these articles shall have been executed and recorded "in the office of the clerk of the city or town in which the business is to be carried on," such association shall become a corporation. Section 2 provides that the object for which the association is established, and the place within which its business is carried on, shall be distinctly set forth in the articles of agreement. Section 3 provides that the business shall be conducted by a president, a board of not less than three directors, and a treasurer, who shall be styled a board of managers, and that the association shall have such other officers as shall be prescribed in its by-laws. Section 4 authorizes the association to make its own by-laws and directs that a copy be filed in the clerk's office. Section 5 provides that the amount of capital stock shall be fixed and limited in the articles, subject to change by vote of the stockholders. Section 6 declares it the duty of the board of managers to prepare and file in the office of the town clerk a statement showing the condition of the association, the amount of its capital stock, par value of the shares, number of shares issued, and the names of the stockholders, with the number of shares owned by each. This statement was to be prepared and filed annually. Section 7 provides that no member shall be entitled to more than one vote. Section 8 provides that no certificate of shares shall be issued to any person until the full amount thereof shall be paid in cash, and that no person shall be allowed to become a shareholder without the consent of the board of managers. Section 11 provides for a distribution of the earnings of the association as often as once each year, and directs the accumulation of a contingent or sinking fund.

A comparison of the provisions of this law with the articles of agreement and the conduct of defendant's business leads to the conclusion that, had the members been sued as copartners for debts in-

curred by the association, it would inevitably have been decided that the association was a corporation de facto under chapter 29, p. 50, Laws 1870. All the elements necessary to constitute a corporation de facto are present: (1) The existence of some law under which such a corporation with the powers assumed might lawfully have been created; (2) an apparent attempt to perfect an organization under this law; and (3) a user of the rights claimed to be conferred by the law. Finnegan v. Noerenberg, 52 Minn. 239, 53 N. W. 1150, 18 L.R.A. 778, 38 Am. St. 552. It is true that the persons forming the association failed to comply with the requirement of the law that the articles should fix and limit the amount of the capital stock, and it is true that the stock was issued without being fully paid in cash and that statements were not filed as required by law. But these and other minor failures to comply with the terms of the law are not reasons for holding that defendant was not a corporation de facto under the law. Had these provisions been complied with, defendant would have been a corporation de jure.

In our opinion it is clear that the organizers attempted to comply with many of the provisions of chapter 29, p. 50, Laws 1870—provisions peculiar to that law and found in no other. The articles stated that the organizers were residents of Minnesota, as they were required to be by the act of 1870; they were more than seven in number, another requirement of the act; they provided for a sinking fund, another peculiar requirement of the act; they provided that each stockholder should have but one vote, exactly as this law provides; the officers and directors were called the "board of managers," as the law says they shall be styled; and of peculiar significa-tion is the language of the articles stating that the signers associated together as a "co-operative association under the laws of the state of Minnesota," and the fact that the articles were filed in the office of the town clerk, as required by the act of 1870, rather than in the office of the secretary of state or register of deeds, as usually required.

There can be no question that the necessary "user" in good faith was shown.

Plaintiff contends that the association was a corporation de facto

under Laws 1873, p. 121, c. 11, entitled "An act relating to manufacturing corporations." Doubtless its promoters might have incorporated under this act; but a consideration of its provisions leads to the conclusion that they did not attempt to do so. They attempted to organize a "co-operative association," not a manufacturing corporation, in the ordinary sense. The act of 1873 contains no restriction on the residence of the persons forming the corporation. It is not local in its character, as is the co-operative association. There is no provision for a sinking fund, such as is in the 1870 law, and provided for in the articles of agreement. The law requires the articles to be published in two newspapers in the county, or at the capital of the state, and requires a certificate showing the purpose for which the corporation is formed, the amount of its capital stock, the amount actually paid in, and the names of its stockholders, with the number of shares owned by each, to be made, filed, and recorded in the office of the secretary of state and the register of deeds. Clearly this association made no attempt to comply with these requirements.

Nor was there any other law that is any more applicable until chapter 351, p. 617, Laws 1897. This was passed five years after defendant was organized, and it is impossible to see how it affects the case. If defendant was a corporation de facto before 1897, the subsequent enactment of a law under which a creamery association might be incorporated would in no way change defendant's status. Even if defendant was not a corporation prior to the 1897 law, we fail to see any evidence of an attempt to organize under it, and this is one of the elements necessary to make a corporation de facto.

We see no escape from the conclusion that the persons who organized the defendant association attempted to form a corporation under Laws 1870, p. 50, c. 29, and exercise the powers conferred on such a corporation by that act. Defendant was therefore a corporation de facto under this act, and in determining its powers and the question of the right of plaintiff to become a member, resort must be had to the provisions of the act, unless there has been legislation since which affects the question. Plaintiff contends that chapter 298, p. 348, Laws 1909, which went into effect before this attempted transfer of stock,

legalizing and making valid all corporations organized under the laws of this state whose certificates of incorporation contain the matters made essential by this chapter, made defendant a corporation de jure, with the powers specified in its articles and none other. It is correct that this law of 1909 made defendant a corporation de jure, but defendant was already a corporation de facto, and this law had no other effect than to change it to a de jure corporation. It did not change the powers that it had as a de facto corporation, or change the rights of stockholders. Defendant, after this law went into effect, became a corporation de jure, organized under chapter 29, p. 50, Laws 1870. It is still necessary to refer to that law to find out the rights of members and stockholders, and the rights of the association as to the admission of new members.

We do not see that R. L. 1905, § 2863, has the effect of making a transfer of stock upon the books or the issuance of a new certificate compulsory when the law under which the corporation is organized makes necessary to such transfer the consent of the managers. This restrictive provision has always been and is to-day in the laws relating to co-operative associations, and clearly section 2863 was not intended to repeal such provision. A co-operative association was evidently considered a corporation of a local character, in which transfers of stock to strangers, perhaps nonresidents, might be undesirable. We have no doubt of the validity of such a restriction on the transfer of shares.

Plaintiff contends that defendant did not rely on this restriction in refusing his demand. Even if this is material, it does not appear to be the fact. It appears from the findings that defendants acted in good faith, in the belief that they had a right under the law controlling the association to refuse to receive plaintiff as a member.

Order reversed, with directions to the trial court to amend its conclusions of law in accordance with this opinion, and to enter judgment for defendant.