## JOHN H. SMITH and Others v. R. O. ARMSTRONG and Others.[1]

February 20, 1914.

Nos. 18,504—(291).

Corporation — liability to officers — principal and surety.

1. The articles of association of a corporation expressly authorized the managing officers thereof to borrow, on their personal credit, money to equip the corporation for the transaction of its business, and obligated the members of the association jointly and severally to repay the money so advanced, if not paid by the corporation; the officers borrowed the money and it was used in the business of the company; the corporation was not legally formed, though it conducted business as such and had a *de facto* existence, it became insolvent and the officers making the loan were compelled to pay the debt thus incurred. It is *held:* (a) That the relation between the officers, so incurring on their personal credit this indebtedness, and the members of the association, was that of principal and surety; and (b) that the members are liable either in contribution, or upon the obligation to reimburse the officers created by the articles of incorporation.

[1] Reported in 145 N. W. 617.

**Res judicata.**

> 2. A judgment in a suit between the same parties upon the same cause of action, is not *res judicata* where the action was dismissed without a determination of the merits of the issues involved.

**Findings sustained by evidence.**

> 3. Findings of the trial court *held* sustained by the evidence.

Action in the district court for Martin county to recover $3,200 paid by plaintiffs for money borrowed and used for the benefit of the Nashville Center Co-operative Creamery Association. The case was tried before Philip E. Brown, J., who made findings and ordered judgment against defendant the Nashville Center Co-operative Creamery Association, adjudging that the same since October 25, 1895, had been a corporation *de facto;* that, after the accounts of the receiver had been approved by the court and his fees and expenses paid, he pay to plaintiff all moneys in his hands as such receiver; that he assign and deliver to plaintiffs all obligations taken by him as such receiver from the members of the association and that plaintiffs are not entitled to any other or further relief. From an order, Quinn, J., denying the motion of defendants R. O. Armstrong and others for a new trial, they appealed. Affirmed.

*E. C. Dean* and *J. E. Palmer,* for appellants.

*Sasse & French, Paul C. Cooper* and *John W. Lovell,* for respondents.

BROWN, C. J.

The facts in this case, without unnecessary detail, as they appear from the pleadings and findings of the trial court, are substantially as follows: In August, 1895, certain persons residing at Nashville Center, a rural hamlet in Martin county, and in the vicinity thereof, deemed it for their interests that a co-operative creamery association be organized and located at that place, and they conferred together for that purpose. A canvass was made among dairy farmers who were induced to and did become participants in the proceedings looking to the incorporation of the company. A preliminary meeting was held, at which it was resolved and agreed that the association be formed and that it be incorporated under the laws of the state. A

set of officers was chosen, and authorized to proceed and perfect arrangements for the incorporation of the company. Plaintiffs Bottomley, Smith, Hinton and Bacon, were chosen as president, vice-president, secretary and treasurer, respectively, and plaintiff Robinson, and John S. Parks, now deceased, and represented as plaintiff herein by the executrix of his estate, were named directors. One of the members was designated as a committee to procure a copy of the articles of incorporation of a similar association located at the village of Winnebago, a few miles distant from Nashville Center, and to report the same at a subsequent meeting. At this meeting, or soon thereafter, the precise date is not important, the persons so intending to organize the company prepared and signed a document, described in the record as Exhibit C, the material portion of which is as follows:

"We, the undersigned, citizens of Martin, Faribault, and Blue Earth counties, state of Minnesota, do hereby agree to form ourselves into an association, to be known by the name of the Nashville Center Co-operative Creamery Association, and we agree to borrow the sum of three thousand dollars, or less, to put up a building and equip it with the necessary machinery, and jointly to become personally responsible for the sum borrowed, including interest. The money to be raised in the manner agreed upon by the association."

At a meeting held on October 26, 1895, a copy of the articles of incorporation of the Winnebago association was presented, and, with appropriate changes, adopted by the members of the Nashville Center Association. The articles of association included a provision in the following language:

"The board of managers shall borrow a sum of money not exceeding three thousand dollars to be used by them in the erecting and furnishing the creamery building for the association, and at such rate of interest and payable at such time and in such manner as to them shall seem best. Or they may borrow the same on their individual responsibility, in which event the fund known as the sinking fund to be provided for herein, shall be applied by the board in payment of such borrowed money as the same becomes due, in the same manner as if the same had been borrowed on the credit of the

association. Said individuals so borrowing shall in such case be held responsible to the creditors of the association to the amount of such moneys unpaid, and they may appropriate to the payment thereof all of the sinking fund then on hand   *   *   *   intending hereby to give to said individuals so furnishing said moneys on their own credit a preference over any other creditor to the amount of goods and property of the association then in its possession as a security for such indebtedness. And after the application of all of the said assets of the association, including the creamery building and fur- · nishing[s] and apparatus to the extinguishment of said debt, *then the stockholders and members of the association* hereby agree to become *jointly and severally obligated with the said individuals for the payment of any balance that may remain due thereon."*

The capital stock of the association was fixed at the sum of $10,000, divided into shares of ten dollars each, and every member was entitled to have issued to him a share of the stock upon compliance with the conditions named in the articles of association. No shares of stock were, however, ever issued to any of the members. The articles also provided for the admission of new members and the terms and conditions thereof. Provision was also made to the effect that no member should be permitted to withdraw from the association without the consent of the board of managers, and that, in the event of a withdrawal, the proceeds of all milk furnished by such withdrawing member then on hand and in the possession of the association "shall be retained until all such money so borrowed shall have been fully paid."

The articles of association were not signed by any of the organizers, though an acknowledgment thereof by one of the members was indorsed thereon by a justice of the peace. However, the articles, as orally agreed to, together with Exhibit C, heretofore referred to, and a copy of the by-laws adopted by the members at the meeting at which the articles of association were so agreed to, were filed with the town clerk of the town of Nashville, in which the association was located. A failure to subscribe the articles by any of the incorporators rendered the incorporation legally defective.

At a meeting of the association on May 20, 1896, it was decided

to locate a skimming station at Bilfry, in Watonwan county, not far from Nashville Center, and its officers were authorized to make a loan of money necessary to construct and equip a building for the purpose. The dairy farmers in the vicinity of Bilfry were solicited to become members of the association, and to agree to provide the Bilfry station with milk and cream. The defendants herein, who resided within the Bilfry district, so became members of the association and thereafter participated in all its proceedings. Both Nashville Center and Bilfry were rural communities with no railroad facilities. In 1899, a railroad was constructed through this neighborhood, and the town of Truman became a railroad station convenient and accessible to both the Nashville Center and the Bilfry members of the association. To induce the association to remove its main plant from Nashville Center to Truman, a large number of dairy farmers in that locality entered into a writing, by which they made themselves members of the association, agreeing thereby, as in the case of the Bilfry and Nashville Center farmers, to supply the association with the milk and cream from a specified number of cows. The association was thereafter moved to Truman and thereafter conducted its main business at that place. Some of the Truman people so signing are defendants in this action. All persons residing in the Nashville Center, Bilfry or Truman territory became members of the association, if at all, by signing and delivering to the association a written pledge to supply the association with the milk from a specified number of cows owned by each. The trial court found that each and all of them so became members of the association, and were entitled to the rights and benefits conferred by the articles of association.

The plaintiffs herein, under the authority conferred by the articles of association, made a loan of money, to the amount of $3,200, with which to construct a creamery building and equip it with machinery. They gave their personal promissory notes for the money so borrowed and were alone personally liable for its payment, with interest. The funds so obtained were used for the purposes stated, and the association and the members thereof received the whole benefit thereof. Plaintiffs have paid this indebtedness, and have never been

reimbursed by the association. The total amount of the indebtedness so incurred and paid amounts, with interest, to the sum of $3,936.25. The corporation became insolvent and unable to pay its debts. A former action was brought by one of the plaintiffs herein, on behalf of himself and all other creditors of the association, to wind up its affairs, to sequester its property and apply the same upon its debts, and for a personal judgment against the members of the association for any deficiency. That action came to this court upon an appeal from an order overruling a general demurrer to the complaint, and, for the reasons stated in the opinion, it was held that the action could not be maintained; the principal reason being that plaintiff had a speedy and adequate remedy at law under those provisions of the articles of incorporation by which the members thereof personally obligated themselves to the payment of this debt. Robinson v. Nashville C. C. Assn. 115 Minn. 43, 131 N. W. 856. Thereafter this action was brought, and is predicated upon the obligation referred to and made in part the basis for the decision in the former case. The action was tried below without a jury, findings of fact made, and judgment ordered in favor of plaintiffs and against each defendant named therein for the sum of $83.75, the same being a proportionate share of the total indebtedness. A new trial was denied and defendants appealed. Defendants all joined in the motion for a new trial and also in the appeal.

1. We follow and apply the law as stated in the opinion in the former case, and hold that all members of the association under the provisions of the articles of association and of Exhibit C. became jointly and severally personally liable for the payment of this indebtedness. Plaintiffs incurred it under authority of the association, have paid it, and the members, by the articles of association above set forth in full, became "jointly and severally obligated with said individuals (plaintiffs) for the payment" thereof. In this view it is immaterial that some of the members, equally liable with defendants, were not made parties to the action, or, though made parties, were not served with the summons. Under the articles of association each member became individually liable for the full amount of the indebtedness, (Robinson v. Association, supra), and

it would seem that those here before the court have no serious cause of complaint from the fact that the amount thereof was equally apportioned among them. So far as concerns this particular indebtedness, incurred and paid by plaintiffs at the instance and for the use and benefit of the association, the relation between plaintiffs and the members of the association was not that of copartners, but more nearly that of principal and surety. At least their rights and liabilities are controlled by the rules of law applicable to that relation. But if it be conceded, in harmony with the contention of counsel for defendants, that the relation was and is that of copartners, then, again, it is clear that recovery may be had and without violating the general rule that one copartner may not sue another for a debt due him from the firm. The rule applicable to the facts here presented is that, where one of several, jointly or jointly and severally liable on a contract for the same debt, pays more than his share, he is entitled to contribution from the others to reimburse him for the excess paid. Gugisberg v. Eckert, 101 Minn. 116, 111 N. W. 945; Bayne v. Greiner's Estate, 118 Minn. 350, 136 N. W. 1041. In other words, the law of contribution applies between joint or joint and several debtors, as well as between sureties. Bayne v. Greiner's Estate, supra; Green v. Mann, 76 Ga. 246.

2. Defendants further contend that the present action is barred by a judgment in a former action between the same parties and involving the same subject-matter. The contention is not sustained. The former action was against the corporation and the members thereof, and though it proceeded to judgment against the corporation, it was dismissed on the trial "without a determination of the merits," as to the members, and no question affecting their personal liability was finally litigated or determined. The judgment in that action is, therefore, not *res judicata* of the issues involved in the present action. Craver v. Christian, 34 Minn. 397, 26 N. W. 8; 2 Notes to Minn. Cases, 818; 2 Dunnell, Minn. Dig. § 5180; County of Morrison v. Lejouburg, 124 Minn. 495, 145 N. W. 380.

3. The only other question presented by the assignments of error is whether the findings of the trial court, to the effect that all the defendants were members of the association and as such assumed the

125 M.—5.

obligation here in suit, are sustained by the evidence. We hold that they are. The original organization of the company was intended for the benefit and profit of those residing at and near Nashville Center, termed in the record the "Nashville group." There is no serious question but that all these members understood the purpose of the organization and of the obligations assumed by them upon joining the association. They were aware of the fact that it was necessary to borrow money for the purpose of equipping the corporation for the transaction of its business, and, by the articles of association and Exhibit C, to which all assented, they authorized the managers of the concern personally to make a loan of the necessary amount for that purpose, agreeing further, jointly and severally, to reimburse them. After the organization had been completed the Bilfry group of members joined the association, and a skimming station was established at that place for their convenience. The evidence tends to show that all these members were advised of the terms of the articles of association and of Exhibit C, and that they assented to the same, and, as found by the trial court, signed and delivered to the company a separate agreement in which they obligated themselves to furnish milk to the company from the number of cows owned by each; and that they did all this for the purpose of becoming members of the association. And, lastly, the Truman group were admitted to the association. This was some time after the indebtedness here involved had been incurred. But each member thereof appears to have been advised of the financial condition of the association, and, at a general meeting of all the members, held at Truman, attended by nearly all the members of each group, the matter of the debts of the association was brought up and considered, and it was then resolved to assume and to pay and discharge the same. From this time on the Truman group was represented on the board of directors by a member chosen by them from that place, and all the members of that group participated in the affairs of the association. The evidence tends to show that the removal of the association to Truman was induced and brought about by the additional strength and support offered by the members from that place, who then became connected with the association, all of whom were advised of the terms and conditions of

the articles of association as originally prepared and agreed to. While there is evidence in the record tending to show that some of the members of the different groups did not attend the various meetings of the association, and participated in the affairs of the association only to the extent of furnishing to it milk and cream, the evidence taken as a whole fully justified the trial court in finding that all the defendants now before the court intended to become and were members of the corporation, and thereby assumed the obligations upon which the action is founded. It is true that no capital stock was issued to any of the members. But this is not important. Their liability in no sense is governed by that fact. Nor is it material that the corporation was not legally created. The fact remains that an attempt to so organize was made, and the parties treated the corporation as a legal entity, and the personal obligations assumed by the members is in no sense lessened by the failure legally to incorporate. The business was continued for many years precisely as though there was a legal corporation, and all the members participated therein, and reaped the benefits accruing from a local creamery association. As held by the trial court, it was a *de facto* corporation.

Order affirmed.

PHILIP E. BROWN, J., took no part.