## P. S. CHAFFEE, Appellant, v. FARMERS' CO-OPERATIVE ELEVATOR COMPANY, Respondent.

(168 N. W. 616.)

**Co-operative association — incorporated — stockholders — transfer of stock — to regulate and limit right — corporation has power to — by-laws — stock ownership — terms and limitations.**

1. A co-operative association incorporated under chapter 92, Laws 1915, is empowered "to regulate and limit the right of stockholders to transfer their

---

NOTE.—On restrictions by by-laws or articles of association on the right to sell or transfer shares of stock, see note in 27 L.R.A. 271.

stock," and "to make by-laws for the management of its affairs, and to provide therein the terms and limitations of stock ownership."

**By-laws — power to adopt — transfer of stock — by holders — provision for previous notice to corporation — opportunity to first buy such stock — par value — plus accrued undivided dividends.**

2. Such co-operative corporation has power to adopt a by-law to the effect that "no stockholder shall transfer his stock without first giving the corporation ninety days' notice and option to purchase said stock at par, plus the accrued and undivided dividends, which are payable per share."

**Enactment of such by-law — subsequent purchase of stock — certificate issued subject to rules and by-laws — assignee holding stock thereafter transferred in violation of such by-law — cannot compel transfer on books of corporation.**

3. Stock purchased from the corporation subsequent to the enactment of such by-law, evidenced by a stock certificate containing a recital that the certificate is "issued and transferable subject to the rules and restrictions provided by the by-laws," is subject to the provisions of such by-law; and one who purchases the certificate and receives an assignment thereof from the original shareholder in violation of the by-law cannot compel the officers of the corporation to transfer the stock to him upon the books of the corporation.

**Laws and enactments — titles of — Constitution — requirements of — subject of act to be expressed in title — regulations — provisions as to — in body of act — validity.**

4. The title to chapter 92, Laws 1915, "An Act to Define Co-operative Associations and to Authorize Their Incorporation and to Declare an Emergency," does not contravene the provisions of § 61 of the Constitution, which requires that the subject of the act shall be expressed in the title, although the act provides that every corporation organized thereunder shall have power "to regulate and limit the right of stockholders to transfer their stock," and "to make by-laws for the management of its affairs, and to provide therein the terms and limitations of stock ownership."

Opinion filed May 25, 1918.

From a judgment of the District Court of Mercer County, *Hanley, J.,* plaintiff appeals.

Affirmed.

*H. L. Berry* and *J. A. Hyland,* for appellant.

The power to regulate the transfer of stock in a corporation does not authorize a corporation to control its transferability by prescribing to whom the owner may sell and upon what terms. Victor G.

Bloede v. Bloede, 84 Md. 129, 33 L.R.A. 107, 57 Am. St. Rep. 373, 34 Atl. 1127.

The power to regulate the transfer does not include the power to restrain transfers or prescribe to whom they might be made, but merely to prescribe the formality to be observed in making them, and a corporation may not prevent a party from selling his stock, even to an insolvent person. Chouteou Spring Co. v. Harris, 20 Md. 383; Sargent v. Franklin Ins. Co. 8 Pick. 90; Bates v. New York Ins. Co. 3 Johns. 238.

Every owner of corporate shares of stock has the same uncontrollable right to alien them which attaches to the ownership of any other species of property. 10 Cyc. 557.

A stockholder may sell his stock at a sacrifice to himself, and the corporation, by any by-law or rule, may not prevent him from so doing. 10 Cyc. 557.

A charter power to regulate the transfer of stock does not include the power to prevent such transfers, or to prescribe to whom the owner may sell, or on what terms. 10 Cyc. 577–579; Chouteau Spring Co. v. Harris, 20 Md. 383.

A by-law which provides that a transfer of stock shall be invalid unless approved by the board of directors or representatives of the corporation is an invalid restraint upon the alienation of the corporate stock. Miller v. Farmers' Mill. Co. 78 Neb. 441, 110 N. W. 995.

Corporate legislation upon the subject of the transfer of stock will not be enforced beyond what is necessary to impart to the corporation knowledge of the names of stockholders, to whom dividends are payable, and who is entitled to vote, and such matters as are of personal concern to the corporation management. Farmers & M. Bank v. Wasson, 48 Iowa, 336; Re Klaus, 29 N. W. 582.

As a general rule, a corporate by-law which restrains the power of a stockholder to transfer stock thereof is an unreasonable restraint on the alienation of property, and is against public policy and therefore invalid. Gould v. Head, 41 Fed. 240; McMulta v. Corn Belt Bank, 164 Ill. 427, 56 Am. St. Rep. 203, 45 N. E. 954; Finch v. Macoupin Tel. Co. 146 Ill. App. 158; Moore v. Bank of Commerce, 52 Mo. 377; Herring v. Ruskin Co-op. Asso. (Tenn.) 52 S. W. 327; Thomp. Corp.

¶ 1026; Johnson v. Laflin, 103 U. S. 800, 26 L. ed. 532; Feckheimer v. National Bank, 79 Va. 80.

The power to provide rules for the transfer of stock does not include the power to prevent the unconditional right of transfer, or to impose a penalty or to refuse the holder of stock the right to vote. 1 Thomp. Corp. ¶ 1027; Kinnan v. Sullivan Co. Club, 26 App. Div. 213, 50 N. Y. 95; Merchants' Bank, 45 Mo. 513; Driscoll v. West Bradley Mfg. Co. 59 N. Y. 96.

The right to acquire, hold, and dispose of property is declared by the Constitution to be inherent in the individual and inalienable. Any attempt by statute or ordinance to interfere with this right is unconstitutional. 8 Cyc. 866 and cases cited; People v. Hawkins, 68 Am. St. Rep. 736.

The law in question is unconstitutional for the reason that it is repugnant to the state Constitution, in that it embraces subjects not expressed in its title. Laws 1915, chap. 92; Fitz Maurice v. Willis (N. D.) 127 N. W. 95; State v. Nomland (N. D.) 57 N. W. 85; Divet v. Richland Co. (N. D.) 76 N. W. 993; Malin v. LaMoure County (N. D.) 145 N. W. 582.

*Nuchols & Kelsch* and *Samuel Rigler,* for respondent.

The title of an act should be liberally construed, and conflict with the Constitution must clearly appear. In case of doubt as to whether the subject is expressed in the title, the law will be upheld.

Titles should be construed in connection with the law, with the view of remedying the evil intended to be obviated by the Constitution makers,—that of preventing fraud by introducing into the body of the law provisions foreign to the subject expressed in the title.

If the subjects in the body of the law are germane, related thereto, or reasonably connected with subject expressed in the title, the provisions of the Constitution are satisfied. State er rel. Erickson v. Burr, 16 N. D. 581; Powers Elev. Co. v. Pottner, 16 N. D. 359; State v. Minneapolis & N. Elev. Co. 17 N. D. 23; State ex rel. Poole v. Peake, 18 N. D. 101; Laws 1915, § 3, chap. 92.

Except where limitations are imposed by the state or national Constitution, the sovereign power of the legislature is practically unlimited. Courts cannot say what means shall be employed to promote the public welfare, or that the means adopted are not the only ones or the

best, to attain the end sought. A violation of the Constitution must be so manifest and clear as to remove all doubt, before a court will declare an act void. The question of the wisdom of a legislative policy is a matter entirely for the legislature. Courts cannot review the economic facts on which the legislature bases its conclusions that an evil exists and should be remedied. State v. Armour, 27 N. D. 177; Van Voert v. Modern Woodmen, 29 N. D. 441; State ex rel. Gaulke v. Turner (N. D.) 164 N. W. 924; Martin v. Tyler, 4 N. D. 278; O'Laughlin v. Carlson, 30 N. D. 213; State v. Fargo Bottling Works, 19 N. D. 213; State v. Olson, 26 N. D. 304.

In determining whether the by-law here in question is contrary to public policy, the court can only look to the Constitution, laws, and judicial decisions of the state, to ascertain the public policy thereof. Vidal v. Girard, 43 U. S. 127.

The defendant is a co-operative corporation. Such corporations are very similar to joint stock companies. The authorities hold that where the articles of association prescribe the manner in which certificates of stock shall be transferred, there must be compliance with such regulation before the assignee can become a member of the association. 28 Cyc. 473, § 3 and cases cited.

A court of equity will not lend its aid in the perpetration of a wrong, nor aid appellant to injure the business of respondent. The court should leave appellant where, by his own mistake and wrongful act, he has placed himself. Funk v. Elevator (Iowa) 121 N. W. 53; Gould v. Head, 41 Fed. 240.

The right of an assignee of stock to have the same transferred on the books of the company is not technical or absolute, and circumstances may surround an assignment of corporate stock which induce courts of equity, in the exercise of a conscientious discretion, to refuse to recognize the assignee as a shareholder and entitled to all the rights thereof, and to withhold a decree against the corporation, commanding the stock to be transferred in his name. Senn v. United Premium Mercantile Co. 115 Mo. App. 585; Funk v. Elev. Co. supra; Thomp. Corp. § 2431; Rice v. Rockefeller (N. Y.) 17 L.R.A. 237.

CHRISTIANSON, J. The defendant Farmers Co-operative Elevator Company is incorporated under the provisions of chapter 92 of the

1915 Session Laws of North Dakota. The other defendants are the officers and directors of the corporation. The corporation has a capital stock of $10,000, divided into two hundred shares having a par value of $50 each. The plaintiff holds two certificates for one share each. These shares were originally sold and the certificates issued to one John M. Erickson, and were purchased by plaintiff and duly assigned by said Erickson to the plaintiff by formal assignment in writing indorsed on the back of each certificate. The stock certificates on their face contained the following provision: "Issued and transferable subject to the rules and restrictions provided by the by-laws." The certificates were duly presented for transfer, and transfer refused, for the reason that it violated the following by-law of the corporation: "No stockholder shall transfer his stock without first giving the corporation ninety days' notice and option to purchase said stock at par, plus the accrued and undivided dividends, which are payable per share."

The plaintiff thereupon instituted this equitable action to compel the officers of the corporation to transfer the shares of stock to the plaintiff on the books of the corporation. The district court rendered a decision in favor of the defendants, and plaintiff appeals.

It is undisputed that the by-law hereinabove set forth had been adopted by the defendant corporation and was in force at the time Erickson became a stockholder therein, and at the time he sold and assigned his stock certificates. It is also undisputed that he failed to comply with its provisions before he sold and assigned the certificates of stock to the plaintiff. Appellant contends, however, that the by-law is invalid, for two reasons: (1) Because it is a restraint on the power of alienation of property not authorized by the laws of this state; and (2) that chapter 92 of the Laws of 1915 (the act under which the corporation was organized) is unconstitutional for the reason that it violates § 61 of the state Constitution. We will consider these propositions in the order stated.

(1) The defendant corporation is organized under chapter 92 of the Laws of 1915. The law was entitled "An Act to Define Co-operative Associations and to Authorize Their Incorporation and to Declare an Emergency." The provisions of the enactment so far as material in this case are as follows:

Sec. 1. "For the purpose of this act, the words 'co-operative company, corporation or association,' are defined to mean a company, corporation or association which authorizes the distribution of its earnings in part, or wholly, on the basis of, or in proportion to, the amount of property bought from or sold to members, or to members and to other customers, or of labor performed, or other services rendered to the corporation. Provided, that nothing in this act shall be construed as in any way conflicting with or repealing any law relating to building and loan associations or instalment investment companies.

"Sec. 2. Any number of persons, not less than 25, may be associated and incorporated for the co-operative transaction of any lawful business, including the construction of canals, railways, irrigation ditches, bridges and other works of internal improvements.

"Sec. 3. Every co-operative corporation as such has power: First—to have succession by its corporate name; Second—to sue and to be sued, to complain and defend in courts of law and equity; Third—to make and to use a common seal, and alter same at pleasure; Fourth—to hold personal estate, and all such real estate as may be necessary for the legitimate business of the corporation; Fifth—to regulate and limit the right of stockholders to transfer their stock; Sixth—to appoint such subordinate officers and agents as the business of the corporation shall require, and to allow them suitable compensation therefor; Seventh—to make by-laws for the management of its affairs, and to provide therein the terms and limitations of stock ownership, and for the distribution of its earnings." See Laws 1915, chap. 92.

The act further provides that any corporation formerly organized under the general corporation law may become entitled to the same legal recognition as though its articles of incorporation had been originally filed under this act, by filing with the secretary of state a declaration signed by its president and secretary, stating that it is a co-operative corporation or association as defined by the statute, and that at a meeting of the stockholders, in which all stockholders were represented, all stockholders unanimously consented to come under the provisions of the act.

Whether a corporation may legally adopt a by-law requiring a stockholder to offer his stock to the corporation and afford it an opportunity of buying the same before offering it to a third person is a ques-

tion upon which the courts have differed.   See 7 R. C. L. p. 263, §
241.   While there are many decisions upon the subject, they are of
little aid in determining the question before us.   Not a single author-
ity has been cited dealing with a similar statute.   In most of the cases
the question arose under the general corporation laws.   Many of the
courts which denied the validity of such by-laws predicated their hold-
ings upon the proposition that there was no statutory authority for
the enactment of a by-law restricting the transfer or ownership of cor-
porate stock.   In some of the cases, the statute merely authorized the
corporation to adopt by-laws to regulate the transfer of stock, and did
not empower the corporation to place any limitation or restriction on
the ownership or transfer of stock.   And at least in one case relied
upon by the appellant the corporation was precluded by the statute
from purchasing shares of its own stock.   Obviously, these decisions
are not applicable in this case.   For it will be noted that the act under
which the defendant corporation was organized confers express power
upon every co-operative corporation organized thereunder, not only to
regulate the transfer of stock, but to "limit the right of stockholders to
transfer their stock," and also authorizes such corporation to provide
in its by-laws "the terms and limitations of stock ownership."   This
language is clear, explicit, and far-reaching.   It is not contained in
the general corporation laws of this state, but is embodied only in the
act providing for the organization of co-operative organizations.   In
this state the right of a corporation to purchase shares of its own stock
from its surplus profits is expressly authorized by statute.   Comp. Laws
1913, § 4531; German Mercantile Co. v. Metz, 21 N. D. 230, 130
N. W. 221.   And the articles of incorporation of the defendant cor-
poration stated that one of the purposes of its organization is "to buy,
hold, or sell and otherwise deal in the stock of this corporation or any
other corporation or association."

Hence, there can be no question as to the power of the corporation
to enter into a contract to purchase its own stock from its surplus
profits.   And it has been held that a by-law like the one here under
consideration may constitute a binding contract upon a stockholder
who was a party to its adoption, even though the corporation might
have no authority to enact it as a by-law.   See New England Trust Co.
v. Abbott, 162 Mass. 148, 27 L.R.A. 271, 38 N. E. 432.   The effect

of the by-law was to give to the defendant corporation an option to repurchase the stock at a definite price at any time a stockholder desired to sell it.   This arrangement was made at the time the stock was sold by the corporation to its different stockholders in the first instance. The certificates of stock issued by the corporation referred to the by-laws, and made the stock certificates subject to the restrictions therein. Parties to a contract of sale may either fix the price themselves, or leave it to be fixed in such manner as they agree upon, provided the method chosen is one by which the price can be determined with reasonable certainty.   So the price may, by agreement, be left to be fixed in accordance with a valuation to be subsequently made by some third person.   35 Cyc. 48, 49; Benjamin, Sales, 6th Am. ed. §§ 87, 88.

Corporations are the creatures of statute.   And the transfer of corporate stock is generally regarded as a legitimate subject of legislative regulation.   The mode of formation, the powers to be exercised, and the manner of such exercise, are matters of policy to be determined by the legislature.   For the public policy which dictates the enactment of law is determined by the legislature.   Public policy is but the manifest will of the state (Jockoway v. Denton, 25 Ark. 625, 634) which must and does vary with the habits, capacities, and opportunities of the public.   Davies v. Davies, L. R. 36 Ch. Div. 359, 56 L. J. Ch. N. S. 481, 56 L. T. N. S. 401, 35 Week. Rep. 697.   And when the legislature has spoken and enacted a law embodying a certain principle, the policy is determined.   And the courts are not concerned with the wisdom or expediency of the legislation or policy adopted, but are merely concerned with the interpretation of the law for the purpose of ascertaining the intent of the legislature.   The only limits upon the legislative power in the establishment of public policy are the restrictions contained in the state and Federal Constitutions.   Co-operative corporations are formed, and intended to operate, upon different principles from general corporations.   This is manifested by the definition contained in the act under consideration.   Co-operation is defined by Funk & Wagnall's New Standard Dictionary:  "A union of laborers or small capitalists for the purpose of advantageously manufacturing, buying, or selling goods, or of pursuing other modes of mutual benefit." Industry is said to be carried on upon the co-operative principle when capital and labor are merged into one.   2 Fawcett, Polit. Econ. p.

254. Few things are more essential to the welfare of any organization than harmony. Nothing is more likely to cause harm, and even destroy the organization itself, than quarrels, dissensions, and conflicting interests among its members. In co-operative societies, this is peculiarly so. They are formed for mutual benefit. The different members are supposed to have, aside from the monetary interest, also a common interest in the object for which the organization was formed.

It is sometimes provided that no person engaged in a competing business shall become a stockholder or member of a co-operative society. See Jackson v. Sabie, 36 N. D. 49, 59, 161 N. W. 722. And frequently the membership is limited to those who, by reason of their vocation, have a common interest in the general object sought to be attained.

If stock in co-operative corporations could be sold and transferred the same as corporate stock in ordinary business corporations, to any person whom the stockholder saw fit, then it would be possible for persons whose interests were antagonistic to the co-operative association to become members therein, and thereby defeat the very purpose for which the corporation was formed. So, it seems not only proper, but necessary, in order that such corporations may continue and accomplish the purpose for which they are organized, to permit restrictions to be placed upon the right to transfer and own stock therein. See Healey v. Steele Center Creamery Asso. 115 Minn. 451, 133 N. W. 69. And when the purpose of co-operative associations and the fundamental distinction between such organizations and ordinary business corporations is considered, the by-law under consideration does not seem to be unreasonable or out of harmony with the statute under which the defendant corporation was organized. On the contrary, it seems to be a reasonable requirement, to enable the corporation to exercise proper supervision over its membership, so as to admit only such as are properly entitled to membership therein, and to exclude therefrom those whose admittance would tend to create disturbance and threaten the very existence of the corporation itself. In our opinion the by-law under consideration is not invalid, but is authorized by the law under which the corporation was formed.

Appellant's next contention is that chapter 92, Laws of 1915, violates § 61 of the Constitution, which provides that "no bill shall em-

brace more than one subject, which shall be expressed in its title." The specific contention is that the title of the act makes no reference to the transfer of stock, and that consequently the provisions of the act authorizing a co-operative corporation to enact by-laws relating to the transfer of stock are not covered by the title.

The requirement that the subject shall be expressed in the title of the act relates to substance, and not to form. The requirement is addressed to the subject, and not to the details, of the act. None of the provisions of a statute will be held unconstitutional when they are related, directly or indirectly, to the same subject, having natural connection, and are not foreign to the subject expressed in the title. As very frequently expressed by the courts, any provisions that are *germane* to the subject expressed in the title may properly be included in the act. Putnam v. St. Paul, 75 Minn. 514, 78 N. W. 90. The Constitution does not contemplate that the title shall employ anything more than general terms, leading to an inquiry into the body of the act. It does not contemplate that the title shall be an index, or furnish an abstract of the contents of the act. Generality or comprehensiveness of the title is not objectionable, provided the title is not misleading and is sufficient to give notice of the general subject of the proposed legislation and the interests likely to be affected. The choice of language is a matter within the legislative discretion. And if the title chosen fairly indicates the general subject of the act, and is comprehensive enough in its scope reasonably to cover all the provisions thereof, and is not calculated to mislead either the legislature or the public, it is a sufficient compliance with the constitutional requirement, even though it be not the most appropriate that could have been selected. See 26 Am. & Eng. Enc. Law, 579–581; Lewis's Sutherland, Stat. Constr. 2d ed. §§ 116–121.

The title must state the subject of the act for the purpose of information to members of the legislature and the public, while the bill is going through the forms of enactment. It is not required that the title should be exact or couched in the most precise language. "It is sufficient if the language used in the title, on a fair construction, indicates the purpose of the legislature to legislate according to the constitutional provision; so that, making every reasonable intendment in favor of the act, it may be said that the subject or object of the law

is expressed in the title." Lewis's Sutherland, Stat. Constr. 2d ed. § 121. As was said by this court in State ex rel. Erickson v. Burr, 16 N. D. 581, 587, 113 N. W. 705, "the title should be liberally, and not technically, construed. The construction should be reasonable. Conflict with the constitutional provision must appear clear and palpable, and, in case of doubt as to whether the subject is expressed in the title, the law will be upheld. Titles should be construed in connection with the law with the view of remedying the evil intended to be obviated by the Constitution makers,—that of preventing fraud or surprise upon the members of the legislature and the people by introducing provisions into the law independent of or foreign to the subject expressed in the title. If the subjects in the law are germane or reasonably connected with the subject expressed in the title, the constitutional requirement is sufficiently met." See also State ex rel. Gaulke v. Turner, 37 N. D. 635, 164 N. W. 924.

By applying these well-settled principles in the case at bar, we have no difficulty in arriving at the conclusion that the statute does not contravene § 61 of the Constitution. The title of the act under consideration specifically states that it was an act to define and authorize the incorporation of co-operative societies. Manifestly, the membership in, and the powers to be exercised by, such corporations, are matters germane to their incorporation. Corporations can be formed and maintained only by members or stockholders. Where stock is issued, membership can be obtained and continued only by the purchase of stock therein. Hence, it seems entirely clear that matters relating to the issuance, transfer, and ownership of stock are connected with and germane to the object of the organization of such corporations, and that a law on that subject might properly enumerate the powers to be exercised by such corporations.

This disposes of the only errors assigned and questions argued in appellant's brief. It follows from what has been said that the judgment of the District Court must be affirmed. It is so ordered.