## SCHOOL DISTRICT NO. 20, CASS COUNTY, v. GENERAL CASUALTY & SURETY COMPANY.[1]

October 18, 1929.

No. 27,422.

*Ryan, Ryan & Ryan,* for appellant.
*Merriam & Wright,* for respondent.

TAYLOR, C.

Defendant had a verdict, and plaintiff appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff, a common school district of the county of Cass, brought this action on a bond executed October 27, 1925, by E. O. Gravdahl, the treasurer of the district, as principal and by defendant as surety.

[1]Reported in 227 N. W. 50.

The bond is in the sum of $1,500 and is made a part of the complaint. It recites that Gravdahl has been duly elected as treasurer of the district and contains the conditions required by statute in a treasurer's bond, and no others. After alleging the execution of the bond, the complaint alleges:

"That thereafter, and before plaintiff accepted said bond, said bond was duly amended to bind defendant to plaintiff for any loss suffered by plaintiff by reason of the failure of any bank used as a depository by plaintiff."

The complaint contains nothing more concerning either the making or the terms of the alleged amendment, and this allegation is a pure conclusion of law. The complaint further alleges that in January, 1927, plaintiff "caused to be deposited with Jenkins State Bank, as its depository, the sum of $1,582.65;" and that in June, 1927, the bank failed and was placed in liquidation by the banking department. It demands judgment against defendant for the amount of the deposit less a dividend of $402.95 paid thereon by the banking department.

Plaintiff rests its case on the claim that under the alleged amendment to the bond defendant became liable to plaintiff for the default of the bank. The money was deposited by Gravdahl, who took a certificate of deposit therefor running to himself as treasurer. He is still treasurer. Plaintiff makes no claim of any default on his part, but relies solely on the claim that defendant is answerable for the default of the bank.

The bank had made an application to be designated as a depository of the district, and at a meeting of the school board in August, 1925, at which an officer of the bank was present, the treasurer was directed by motion, "to deposit $1,500.00 on certificate of deposit at four per cent per annum as money is available, and said bank furnishes surety bond to cover same." No written designation of the bank as a depository was ever made or filed as required by G. S. 1923, § 2836, as amended, 1 Mason, 1927, id. and the bank never executed a bond to the district. Consequently the bank never became a legal depository of the district, and the treas-.

urer remained liable for any funds which he deposited therein. School Dist. No. 1 v. Aiton, 173 Minn. 428, 217 N. W. 496.

A. J. Schunk of Minneapolis was the representative of defendant in Minnesota and authorized to execute surety bonds on its behalf. Early in October, 1925, Andrew Robertson, the cashier of the bank, caused Gravdahl to make a formal written application for a bond as treasurer. Shortly thereafter Robertson mailed to the clerk of the district the bond in question executed by Gravdahl as principal and by defendant as surety. The clerk returned it to Robertson with a letter saying that the bond was a bond for Gravdahl as treasurer instead of a bond for the bank as a depository. Robertson returned the bond to Schunk and wrote:

"What I am interested in is the bond for E. O. Gravdahl, for School District No. 20, Cass County, Minn. The bond I wanted for them is a bond that will protect both for the school treasurer and the depository for the School District."

The bond was returned to Robertson with a letter purporting to have been written by Schunk, and Robertson forwarded the bond and letter to the clerk. Thereafter the clerk and the chairman approved the bond. As plaintiff rests its case on the proposition that the letter from Schunk to Robertson operated to amend the provisions of the bond so that it became a surety bond for the bank as a depository of the funds of the district, we quote it in full:

"Mr. Andrew Robertson,
"Jenkins, Minn.

"Dear Sir:    Re: Bond—E. O. Gravdahl.

"This bond is being returned to you as the coverage you indicate is contained in the provisions of the bond. If you will read the last paragraph, just take the last two lines, in which the bond provides as follows: 'And pay over and deliver such money and property without delay to the office entitled by law thereto,' you will find that this covers the very question that you raise. In other words, all public official bonds covering treasurers also cover the depository feature. This bond is drawn exactly as the statute requires and is the only kind you can get.

"We have furnished thousands of this kind of bonds and never have had so much difficulty heretofore as with this one, and it is entirely due to a lack of understanding so far as the conditions of the bond are concerned.

"The operation, in case of loss, would be this: If the money was not in the hands of the treasurer due to a bank failure, the surety would have to pay, just as much as though the treasurer had appropriated the funds for his own use.

"Where the treasurer's bond is over $2,000.00 we usually require that the bank carrying the funds furnish depository bonds. That is always ironed out before the treasurer's bond is written but it has nothing whatever to do with the treasurer's bond, as the question you raise is covered in this bond."

The treasurer had made a formal written application for a bond, and Schunk had prepared a treasurer's bond containing the statutory conditions, which bond had been executed by the treasurer as principal and by defendant through Schunk as surety. There is nothing to indicate that Schunk had any knowledge of the fact that the treasurer had previously given a treasurer's bond, or of the intention to designate the bank as a depository, or that anything other than a treasurer's bond was desired. So far as appears, the only information he had was that contained in the written application for a treasurer's bond, and in the excerpt quoted from the letter of Robertson. Robertson did not say that the bond wanted was the bond required of a bank in order to become a depository of school district funds. He made no reference to the bank or to securing an obligation of the bank. His letter is not definite or clear; but, in view of the only information given to Schunk, Schunk could, and evidently did, read it as asking for a treasurer's bond which would protect the district against any wrongful acts of the treasurer and also against any loss of deposits made by the treasurer. It is common knowledge that treasurers deposit in some bank the funds which they receive although no legal depository has been designated. Schunk's letter must be interpreted in the light of the information which he possessed, and cannot reasonably

be construed as referring to anything other than the treasurer's bond. He heads his letter: "Re: Bond—E. O. Gravdahl." He states that the provision binding the treasurer to pay over the funds of the district to those entitled thereto furnished the coverage desired, and that all "official bonds covering treasurers also cover the depository feature." To explain further he states:

"The operation, in case of a loss, would be this: If the money was not in the hands of the treasurer due to a bank failure, the surety would have to pay, just as much as though the treasurer had appropriated the funds for his own use."

This statement is correct where only a treasurer's bond is given. The treasurer remains liable for funds deposited in a bank unless the bank has been made a legal depository under and pursuant to the statute. Schunk's remark in the final paragraph of the letter, that where the treasurer's bond is more than $2,000 they usually required the bank carrying the funds to furnish depository bonds, but that such requirement had nothing to do with the treasurer's bond, further indicates that he understood that the bond which he was to furnish and which he was discussing was a treasurer's bond. He had never been asked to furnish a depository bond for the bank and, so far as appears, did not know that such a bond was expected or contemplated by anyone. Assuming, as claimed by plaintiff, that his letter is to be considered either as a part of the bond or as defining its effect, it cannot possibly be construed as transforming the bond from a bond securing the fidelity of the treasurer into a bond securing the obligations of the bank as a depository.

This conclusion renders it unnecessary to consider the contention of defendant that the letter was not admissible in evidence because not authenticated; or its further contention that the provisions of the bond could not be changed or amended by such a letter.

The order is affirmed.