## CLARA EBELING AND OTHERS v. INDEPENDENT RURAL TELEPHONE COMPANY AND ANOTHER.[1]

January 13, 1933.

No. 28,997.

*Bundlie & Kelley* and *Ernest Torinus,* for relators.
*Nelson & Nelson,* for respondents.

DIBELL, J.

Certiorari on the relation of the defendants, Independent Rural Telephone Company and the Bankers Indemnity Insurance Com-

[1]Reported in 246 N. W. 373.

pany, its insurer, to review an order of the industrial commission awarding compensation to Clara Ebeling and other dependents of Michael G. Ebeling, who received injuries while working on the line of the telephone company from which he died on June 3, 1931.

The decedent was a lineman. There is no contention but that he was at work on the company's line when he received the injuries which resulted in his death. He was not continuously employed, for the line did not require work from day to day, but he was used for the work when needed. The term "employer" is defined in G. S. 1923 (1 Mason, 1927) § 4326(d), and the term "employe" is defined in G. S. 1923 (1 Mason, 1927) § 4326(g). The decedent was within the definition of employe. The defendants claim that the telephone company was a copartnership and that the decedent, since he was one of the copartners, could not be an employe of it within the compensation act. The claim of the plaintiffs is that the company was at the least a de facto corporation of which the decedent was an employe. The defendants do not claim that if the company was a de facto corporation the plaintiffs could not have compensation because the decedent was interested in it; nor do they claim that his death did not arise out of and in the course of his employment.

Because of the conclusion we have reached, the question whether a member of a copartnership who works in its business can have compensation for an injury is not before us. The case of Angell v. White Eagle O. & R. Co. 169 Minn. 183, 210 N. W. 1004, referred to by counsel, is not in point. The defendants cite many cases to the effect that a member of a copartnership cannot be an employe within the compensation act. The plaintiffs cite cases to the effect that he may be. The question is considered in notes in 15 A. L. R. 1288; 25 A. L. R. 376; 44 A. L. R. 1217; and 47 A. L. R. 843. We proceed to the decisive question whether the defendant Independent Rural Telephone Company was a de facto corporation.

■ To constitute a de facto corporation there must be a valid law pursuant to which a corporation de jure may be formed; a bona fide or colorable attempt to incorporate; and a user of corporate powers. Finnegan v. Noerenberg, 52 Minn. 239, 53 N. W.

1150, 18 L. R. A. 778, 38 A. S. R. 552; Hause v. Mannheimer, 67 Minn. 194, 69 N. W. 810; Johnson v. Okerstrom, 70 Minn. 303, 73 N. W. 147; Healey v. Steele C. C. Assn. 115 Minn. 451, 133 N. W. 69; Smith v. Armstrong, 125 Minn. 59, 145 N. W. 617; Mabel First Lutheran Church v. Cadwallader, 172 Minn. 471, 215 N. W. 845; 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 1981, and cases cited; 14 C. J. p. 204, § 215; 8 Fletcher, Cyc. Corp. §§ 3776-3777, pp. 71-75; Am. Dig. Corp. § 28(1). In Finnegan v. Noerenberg, 52 Minn. 239, 243, 53 N. W. 1150, 18 L. R. A. 778, 38 A. S. R. 552, Chief Justice Gilfillan said:

"It is unnecessary to consider whether this was a *de jure* corporation, so that it could defend against a *quo warranto,* or an action in the nature of *quo warranto,* in behalf of the state; for, although an association may not be able to justify itself when called on by the state to show by what authority it assumes to be, and act as, a corporation, it may be so far a corporation that, for reasons of public policy, no one but the state will be permitted to call in question the lawfulness of its organization. Such is what is termed a corporation *de facto,*—that is, a corporation from the fact of its acting as such, though not in law or of right a corporation. What is essential to constitute a body of men a *de facto* corporation is stated by Selden, J. in Methodist, etc. Church v. Pickett, 19 N. Y. 482, as '(1) the existence of a charter or some law under which a corporation with the powers assumed might lawfully be created; and (2) a user by the party to the suit of the rights claimed to be conferred by such charter or law.' This statement was apparently adopted by this court in East Norway Church v. Froislie, 37 Minn. 447, (35 N. W. Rep. 260;) but, as it leaves out of account any attempt to organize under the charter or law, we think the statement of what is essential defective. The definition in Taylor on Private Corporations (page 145) is more nearly accurate: 'When a body of men are acting as a corporation, under color of apparent organization, in pursuance of some charter or enabling act, their authority to act as a corporation cannot be questioned collaterally.' "

■ The Independent Rural Telephone Company was organized on June 25, 1913. At that time the statutes provided for the incorporation of rural telephone lines. We quote G. S. 1913, §§ 6479-6482:

"6479. A co-operative association may be formed for the purpose of engaging in any lawful mercantile, manufacturing, or agricultural business. Its certificate of incorporation shall be filed for record with the register of deeds of the county of its principal place of business, and thereupon it shall become a corporation. A majority of the incorporators shall be residents of the county of its principal place of business, and its duration without renewal shall not exceed twenty years.

"6480. Seven or more persons of lawful age, inhabitants of this state, may, by written articles of agreement, associate themselves together for the purposes of trade or for carrying on an [any] lawful mercantile, manufacturing, agricultural or rural telephone business within this state; and when such articles of association shall have been executed and recorded in the office of the clerk of the city or town in which the business is to be carried on, such persons shall be and become a corporation, and enjoy all the powers and privileges, and can buy and hold stock in other corporations organized for the same general purpose, and be subject to all duties, restrictions and liabilities set forth in all general laws in relation to similar corporations, except so far as the same may be limited or enlarged by this act.

"6481. A co-operative association may be formed for the purpose of engaging in any lawful mercantile, manufacturing, agricultural or rural telephone business. Its certificate of incorporation shall be filed for record with the register of deeds of the county of its principal place of business, and thereupon it shall become a corporation. A majority of the incorporators that reside in this state shall be residents of the county of its principal place of business, and its duration without renewal shall not exceed twenty years.

"6482. Every such association shall have a president, a treasurer, and not less than three directors, who shall together constitute a

board of managers and conduct its business. Such officers shall be chosen annually by the stockholders, and hold their offices until others have been chosen and qualified. The association shall make its own by-laws, not inconsistent with law, and may therein provide for any other officers deemed necessary, and the mode of their selection. It may amend its certificate of incorporation at any general stockholders' meeting, or at any special meeting called for that purpose, upon ten days' notice to the stockholders."

G. S. 1913, § 6479, was R. L. 1905, § 3073, which referred to forming coöperative associations for any lawful mercantile, manufacturing, or agricultural business, but did not mention telephone lines.

G. S. 1913, § 6480, was L. 1905, p. 410, c. 276, approved April 18, 1905, which amended G. S. 1894, § 2903, relating to the formation of coöperative associations but not referring to rural telephone companies. The 1894 compilation itself referred back to a law as early as 1870.

The same legislature, that of 1905, enacted c. 313, approved April 19, 1905, which amended the same section of G. S. 1894, and is the language of G. S. 1913, § 6481. G. S. 1913, § 6482, is the language of R. L. 1905, § 3074, and does not refer to telephones.

By R. L. 1905, § 5504, it was provided that it should take effect March 1, 1906, but should not be construed as abrogating any act passed at the 1905 session, and that such acts, if they differed from the revision, should "be construed as amendatory thereof or supplementary thereto." This seems to explain the confusion, if there is any, between the language of § 6480 and § 6481. Both are based on the session laws of 1905; and, as far as we have found, they are the first to mention specifically rural telephone lines. There have been various amendments and repeals since. They are not important to our present consideration.

■ The Independent Rural Telephone Company was organized on June 25, 1913, for the purpose of doing a local telephone business in Steele county. There were 12 or more members, with a president, secretary, and treasurer, all of whom signed the so-called articles. Members dropped out and others came in.

The commission in a memorandum attached to its findings and order stated relative to the organization of the company, and what is said is correctly gathered from the record:

"This company was formed about the year 1913 by a group of about twelve farmers residing in Steele County. At the time of its formation, the members subscribed to written articles described as Articles of co-partnership. Briefly, the articles provided that the name of the company be 'The Independent Rural Telephone Company'; that it commence its existence on June 25, 1913, and continue for a period of ten years; that its object be to acquire, construct, maintain and operate a rural telephone exchange system; that the moneys necessary for the construction and maintenance of the lines of the company be raised by subscription from each of the members; that the business be conducted through a president, vice president, secretary and treasurer and three directors. The articles also defined the duties of the various officers and contained a set of rules and regulations, similar in form to a set of by-laws, outlining the plan under which the affairs of the company were to be conducted.

"The persons organizing the company signed the original articles. From time to time new members were taken in and old ones withdrew. When a new member was taken into the company, he was required to sign the articles and to pay a fee equal to the amount required of each original member. When a member withdrew from the company, or transferred his share to a new member, he was paid an amount equivalent to the value of his share and his name was scratched from the articles. No certificates of stock or other evidence of membership were issued.

"About the time of its organization, the company entered into a contract with the Northwestern Telephone Company whereby the latter company agreed to connect the telephone lines of the Independent Rural Telephone Company with its exchange at the exchange limits of the city of Owatonna and agreed to furnish the Independent Rural Telephone Company with long distance service at the schedule rates charged by the Northwestern Telephone Exchange Company for service."

The articles of association were not recorded in the office of the clerk of the city or town in which the business was to be carried on within G. S. 1913, § 6480; nor was there any filing with the register of deeds within G. S. 1913, § 6481. The company did business as indicated in the commission's memorandum. Stock was not issued. A crude method of evidencing interests in the enterprise and transfers thereof was devised. The company maintained 11 miles of telephone line and several times that number of miles of wire. It obtained for its members and to some extent furnished to others telephone service. It reported to the railroad and warehouse commission as the controlling body and reported to the tax commission for the purpose of an assessment of a gross earnings tax. We have not considered this of much importance, for it should have done so if a copartnership. There is evidence that some of its members supposed they were organizing a corporation at the time. Quite likely a number of them never gave particular thought to it. Probably many of them did not distinguish between a copartnership and a corporation. In getting industrial insurance it was referred to as a corporation; and it reported to the railroad and warehouse commission as being a farm line company and gave the names of its president, its secretary, and its treasurer. It is not difficult to hold that it was a de facto corporation.

It is plain that the legislature by the statutes of 1905 intended to give rural communities a convenient way of getting telephone service through a coöperative association which should be a corporation. It is rather clear that the farmers in the locality sought to take advantage of the statute. And it made use of its privileges as if organized de jure. We hold that the defendant Independent Rural Telephone Company was a de facto corporation and that the order of the industrial commission awarding compensation to the dependents of the deceased was right.

An attorney's fee of $100 is allowed in this court to the dependents.

Order affirmed.