SCHOOL DISTRICT NO. 1, ITASCA COUNTY, v. GEORGE B. AITON AND ANOTHER.[1]

January 27, 1928.

No. 26,393.

**Liability of school treasurer for school funds.**

1. A school treasurer is absolutely liable for funds coming into his hands. An exception to this rule exists when funds are deposited in a legally designated depository under G. S. 1923, §§ 2836, 2837.

**Exception to the general rule.**

2. When the funds are deposited in a bank of which the treasurer, being a member of the school board, is also an officer and stockholder, the exception to the general rule is inoperative.

**De facto statutory depository.**

3. Upon the facts stated in the opinion, *held* that a de facto statutory depository was created and the dual capacity of the treasurer-banker did not prevent the bank from becoming such.

[1]Reported in 217 N. W. 496.

**When surety of such depository could limit its contract of indemnity.**

4. Upon the facts the surety had a right to contract in reference to the exception to the rule of absolute liability and to limit its contract of indemnity in order not to be responsible for loss due to the failure or other acts of the depository, the treasurer not being liable therefor in the absence of his duplexity.

Depositories, 18 C. J. p. 591 n. 62.
Schools and School Districts, 35 Cyc. p. 912 n. 93; p. 915 n. 22.

See note in 36 L.R.A.(N.S.) 285; 22 R. C. L. 470.

Action in the district court for Itasca county to recover of defendant Aiton as treasurer of the plaintiff and from defendant United States Fidelity & Guaranty Company, his surety, a balance of $51,093.10 of plaintiff's funds remaining on deposit in the Security State Bank of Grand Rapids when it became insolvent on September 30, 1924. The case was tried before McClenahan, J. who found for defendants. From an order, Freeman, J. granting plaintiff's motion for a new trial, defendants Aiton and the surety separately appealed. Affirmed as to defendant Aiton and reversed as to defendant surety.

*R. A. McOuat,* for appellant Aiton.

*Cobb, Wheelwright, Hoke & Benson, Claude Krause* and *L. M. Staples,* for appellant surety.

*Baldwin, Baldwin, Holmes & Mayall* and *H. W. Stark,* for respondent.

Wilson, C. J.

Appeal from an order granting a new trial upon the ground of errors of law occurring at the trial and resting upon the theory that the established facts fail to sustain the conclusions of law. There are separate appeals by George B. Aiton and the United States Fidelity & Guaranty Company.

Defendant Aiton has been treasurer of plaintiff school district from 1918 to and including September 30, 1924. During such time he was also a member of the school board, president of the Security State Bank of Grand Rapids, Minnesota, and a member of its board

of directors. He owned during that time a majority of the capital stock of the bank which, being insolvent, closed its doors on September 30, 1924.

On or about September 8, 1915, the bank presented an $80,000 depository bond to the school board, under G. S. 1923, § 2836. The bank presented additional depository bonds as follows: August 16, 1921, $75,000; June 24, 1922, $50,000; July 1, 1922, $50,000; all of which were accepted and approved by the school board as presented.

No written designation of the bank as a depository for the funds of the school district, in accordance with the provisions of G. S. 1923, § 2836, was ever made or filed with the clerk.

All the members of the school board, including Aiton, were of the opinion that the only action necessary to make the bank a legal depository for the funds of the district was the approval of the depository bonds. Aiton at all times herein mentioned, as treasurer of the school district, deposited school funds in the bank in reliance upon the depository bonds and the board's acceptance and in the belief that the bank was a legally designated and qualified depository for such funds in accordance with the statute. Soon after August 21, 1921, the board, including Aiton, knew that the attorney general had given an opinion that a bank could not legally be designated or act as such depository so long as the treasurer of the school district was a stockholder and officer of the bank and a member of the school board.

On July 16, 1921, defendant United States Fidelity & Guaranty Company executed with Aiton a bond to plaintiff for $50,000 for the faithful performance of his duties as such treasurer for the term of one year from August 1, 1921. It also executed for the same purpose similar bonds as follows: $50,000 for one year from August 1, 1922; $50,000 for one year from August 1, 1923; and $50,000 for one year from August 1, 1924. Each bond contained the following provision:

"It is understood and agreed, and this bond is given and accepted on the condition that the surety shall in no way be held liable for any loss, costs, damages or expenses of any kind caused by the failure of any bank, institution or depository of any kind to pay, deliver

over or properly account for any money, moneys, papers, securities or property of any kind placed on deposit therein or in its custody by or for said George B. Aiton as such treasurer or in any other capacity."

During the four years covered by the fidelity bonds, Aiton as treasurer deposited large sums of money in the bank and disbursed in the manner hereinafter indicated all but $51,093.10, which was the balance appearing upon the bank's books when it closed. From January 1, 1924, to September 30, 1924, the bank was in a precarious condition. This was known to Aiton, who believed at all times until the bank was actually closed that it would be possible for it to continue business without loss to its depositors.

The school district sustained no loss by reason of any wrongful failure of Aiton as treasurer to pay school warrants when presented for payment; and the finding is that the said sum of $51,093.10 has been lost to the school district as a proximate result of the failure of the bank.

1. The law imposes absolute liability upon a public officer such as a school treasurer for the safety of the funds coming into his hands. He is answerable for all he receives. Commrs. of Hennepin County v. Jones, 18 Minn. 182 (199); Commrs. of McLeod County v. Gilbert, 19 Minn. 176 (214); Commrs. of Redwood County v. Tower, 28 Minn. 45, 8 N. W. 907; Bd. of Ed. v. Jewell, 44 Minn. 427, 46 N. W. 914, 20 A. S. R. 586; N. P. Ry. Co. v. Owens, 86 Minn. 188, 90 N. W. 371, 57 L. R. A. 634, 91 A. S. R. 336; State v. Bobleter, 83 Minn. 479, 86 N. W. 461.

The legislature has created a very definite exception to the above rule. G. S. 1923, §§ 2836 and 2837. The statute authorizes the officers of a common and independent school district to select and designate as a depository any bank which gives a depository bond to be approved by the district. Such designation shall be in writing, signed by the chairman and clerk, and filed with the clerk. The treasurer, under the statute, is exempt from liability if loss comes from the failure or other acts of the bank. The district will presumably be protected from such hazard by the depository bond, and

it is only just that the surety of the one who causes or permits the loss should be the one to answer therefor.

2. Plaintiff's board consists of a chairman, a clerk and a treasurer. It was the intention of the board to designate the bank a legal depository under authority of the statute. Everything with one exception was done to perfect the plan. The board did not execute and file the designation. The bonds were furnished, approved and accepted. The money was deposited, and doubtless received, under the belief that the bank had been duly designated a legal depository. That was the hope of the bank's sureties. The plaintiff's bank account was considerable. Many checks were drawn. The bank's name was printed on the checks which were signed by the treasurer but which were not good unless countersigned by the chairman and clerk, both of whom signed on a form on the back. The depositing of the money in the bank created a contractual relationship between plaintiff and the bank. The books sometimes refer to such transactions as a loan. It is clear that G. S. 1923, § 10305, which forbids a public official's making contracts where he is interested, is applicable; and for that reason under the facts the exception to the general rule was inoperative as to the school treasurer. He brought himself within the operation of City of Minneapolis v. Canterbury, 122 Minn. 301, 142 N. W. 812, 48 L.R.A.(N.S.) 842, Ann. Cas. 1914D, 804, and cases therein cited; Kampfer v. Peterman, 166 Minn. 306, 207 N. W. 633; State v. Danculovic, 168 Minn. 359, 209 N. W. 941. The bank was eligible to become a depository, but Aiton's dual capacity was a legal obstacle. The treasurer thought the bank had been designated. His good faith alone cannot protect him. Unfortunately he did not accept the opinion of the attorney general in the proper attitude. He ignored it and continued the practice which it condemned. His long course of honorable public service, manifesting the deepest loyalty and highest sacrifice, cannot shield him from the consequences of his conduct. His liability is just as definite as if he had the money in his pockets or just the same as if he had lost the money by the failure of a bank in which he had deposited it solely by his own choice.

3. As to Aiton's surety we have quite a different situation. Its liability is not in all things the same as its principal. We construe the limitation of the surety's liability as expressed in the bond as relating only to a depository within the contemplation of G. S. 1923, § 2836. So construed there can be no question as to the surety's right to so contract. The surety's contract was made in reference to a depository. Its reference was to a supposedly legal depository. All the parties so intended. May it be said then that because of a delinquency or a deficiency in action on the part of the plaintiff the surety must be held to a contract which it never contemplated? To so hold would doubtless give the plaintiff more protection than it would have had, had it performed all that it really intended and successfully created the legal depository. It would also make the surety of Aiton's fidelity answerable for the failure of the bank, which was the proximate cause of plaintiff's loss. This was never intended. It guaranteed the fidelity of Aiton, whose integrity was the basis of its undertaking. He had never failed to pay warrants until he was rendered unable to do so by the closing of the bank.

The claim is that Aiton imposed a liability upon the surety by making an unlawful disposition of the money; that every deposit in the bank was a separate wrongful act, an illegal loan, subjecting the surety to liability; repeated acts in which plaintiff participated and concerning which it had knowledge from the beginning. But the fact is found by the court that not this diversion of the money but the bank's failure caused the loss. We do not however need to pursue this branch of the case because we are of the opinion that the surety's contractual limitation in the bond must, in view of the findings of fact, preclude a recovery from it.

The bank was not legally designated as a depository. But it was a depository in fact. Plaintiff believed it to be a legal depository. It approved and accepted the depository bonds and thought that was all that was required. The bonds contain a recital that the bank had been designated and selected as a depository of the school district. The bank did all that was required of it to become such. It became in fact a depository and must have supposed that it was a legal one. The bank's sureties had a right to assume that their

purpose was accomplished. Aiton thought the bank was a legal depository and deposited money therein in reliance on the approved depository bonds. All interested parties intended, believed and supposed that the things done constituted the necessary designation. The opinion of the attorney general did not relate to the failure of designation, but it went to the dual capacity in which Aiton was acting and in which he stubbornly, erroneously, but perhaps sincerely persisted without apparent opposition. Under this misapprehension the bank functioned for years as a depository. Its ineffectual designation was unknown and unobserved. Under such circumstances it was a de facto depository. Bd. of Co. Commrs. v. State Bank, 64 Minn. 180, 66 N. W. 143. That is sufficient. Bd. of Co. Commrs. v. American L. & T. Co. 75 Minn. 489, 78 N. W. 113. The plaintiff's cause of action against the depository is not affected by the dual capacity of Aiton. People v. Bankers Surety Co. 158 Mich. 30, 122 N. W. 353. Nor does the presence of this unfortunate element prevent the depository from becoming a de facto one, which merely means that which is actual in fact.

4. Being such de facto depository, the surety had the same right to make its contract in reference thereto as if the bank had been a depository de jure. This is not a case where the surety attempted to limit its liability for the "faithful discharge" of the treasurer's duties. We may assume, without deciding, that such could not be done. It may, however, under the facts in this case and in view of the depository statute, make the limitation which it did, which is binding when the depository is actual whether it be a de jure or merely a de facto one.

The essential elements of a de facto depository are these: A law under which a bank may be made a depository; a bona fide attempt to create the depository, accompanied by a colorable compliance with the statutory requirements; and an actual user or exercise of the depository powers and duties pursuant to such law and attempted designation. All these essential elements are present. The possibility of a de jure depository is the only condition requisite to a de facto depository. It is not a sound test that the particular

constituents could not have become a de jure depository. Mabel First Lutheran Church v. Cadwallader, 172 Minn. 471, 215 N. W. 845; Toledo, St. L. & K. C. R. Co. v. Continental Tr. Co. 36 C. C. A. 155, 95 F. 497. The principle involved seems analogous. Aiton's ineligibility to act because of his dual capacity does not prevent the bank from becoming a de facto depository. Reasoning further by analogy the courts hold that officers may be de facto where they act under color of an election or appointment void because the officer was not eligible; or under color of an election or appointment by or pursuant to a public unconstitutional law before the same is adjudged to be such. 22 R. C. L. 588, and cases cited.

These authorities would tend to support the conclusion we reach even if we should say that because of the statute the bank was ineligible, which we do not, to become a depository. The rule is, however, that there cannot be a de facto corporation unless there is a valid law under which such a corporation might exist de jure. 14 C. J. 215; Marshall v. Keach, 118 A. S. R. 247, note 255; L. R. A. 1916C, 216. Notwithstanding Richards v. Minnesota Sav. Bank, 75 Minn. 196, 77 N. W. 822, such is the rule in this state. Finnegan v. Noerenberg, 52 Minn. 239, 53 N. W. 1150, 18 L. R. A. 778, 38 A. S. R. 552; Johnson v. Okerstrom, 70 Minn. 303, 73 N. W. 147; Healey v. Steele Center Creamery Assn. 115 Minn. 451, 133 N. W. 69; Evens v. Anderson, 132 Minn. 59, 155 N. W. 1040; Moe v. Harris, 142 Minn. 442, 172 N. W. 494; Harrill v. Davis (C. C. A.) 168 F. 187, 22 L.R.A.(N.S.) 1153. But we have the valid law in the instant case authorizing the creation of the depository. That law was not destroyed by Aiton's duplexity which barred the making of the contract involved. His incapacity was due to another law.

The order from which the appeal was taken is affirmed as to George B. Aiton and reversed as to the United States Fidelity & Guaranty Company.