SCHOOL DISTRICT NO. 1, ITASCA COUNTY, v. GEORGE B. AITON AND MARYLAND CASUALTY COMPANY. SAME PLAINTIFF v. GEORGE B. AITON AND UNITED STATES FIDELITY & GUARANTY COMPANY.[1]

October 5, 1928.

Nos. 26,685, 26,359.

**Questions permissible on appeal from grant of new trial are not permissible on subsequent appeal from its denial.**

1. On the appeal from the order granting plaintiff a new trial it had the opportunity to urge every available matter contained in the record in support of the order; hence no question which might have been raised and determined on that appeal can be raised on plaintiff's appeal from the judgment entered in virtue of the reversal of the order granting a new trial.

**Power of judge acting as substitute for incapacitated judge.**

2. Where the trial judge has become incapacitated and a motion for a new trial is heard by another judge, the latter has no power to amend findings of fact, but he may amend the conclusions of law so as to direct the entry of the judgment demanded by the findings of fact; and he may grant a new trial for the same causes which the trial judge may grant it.

**Failure of trial judge to exercise judicial power and discretion.**

3. This court cannot conclude that the judge below failed to exercise the judicial power and discretion he possessed in regard to any matter presented by the motion for new trial, unless the record clearly discloses that he so failed to exercise such power because he erroneously conceived he did not possess the same.

**Surety free from liability for school funds lost in failure of bank.**

4. Our former opinion having determined that a bank was a depository de facto as to the surety on the school treasurer's bond, such surety was relieved under G. S. 1923, §§ 2836 and 2837, from liability for funds of plaintiff deposited in the bank and lost as the result of the bank's failure.

[1] Reported in 221 N. W. 424.

**Loss of school moneys proximate result of bank's failure.**

5. The finding is sustained that the funds were lost as a proximate result of the failure of the bank.

**When by terms of its bond surety would not be liable.**

6. Even though the treasurer knew the bank to be unsafe when deposits were made, it would not constitute his wrong a concurring proximate cause of the loss to plaintiff so as to make the Maryland Casualty Company liable under the plain terms of its bond.

Appeal and Error, 4 C. J. p. 682 n. 81; p. 833 n. 50.
New Trial, 46 C. J. p. 403 n. 34.
Schools and School Districts, 35 Cyc. p. 915 n. 22.

Plaintiff appealed from two judgments, Freeman, J. of the eleventh judicial district acting for McClenahan, J. of the fifteenth judicial district who tried the cases and later was incapacitated because of illness, entered respectively in favor of defendants Maryland Casualty Company (26,685) and United States Fidelity & Guaranty Company (26,859). Affirmed.

*Baldwin, Baldwin, Holmes & Mayall,* for appellant.

*Abbott, MacPherran, Dancer, Gilbert & Doan,* for respondent Maryland Casualty Company.

*Cobb, Hoke, Benson, Krause & Faegre* and *L. M. Staples,* for respondent United States Fidelity & Guaranty Company.

HOLT, J.

Plaintiff appeals from the judgment rendered in two actions brought upon bonds given by Mr. Aiton as treasurer of plaintiff, a school district. Through the failure of a bank controlled by the treasurer the funds of the school district deposited in the bank were lost. In the one action the United States Fidelity & Guaranty Company was the surety and in the other the Maryland Casualty Company. The actions were tried as one, but separate findings of fact and conclusions of law were made and filed in favor of both principal and surety. Plaintiff moved for a new trial in each case. Illness having incapacitated the trial judge, the motions by consent were submitted to Judge Freeman of an adjoining district. Upon the hearing the parties stipulated amendments of the findings of fact. They were accordingly amended, and thereupon Judge

Freeman denied a new trial in the Maryland company case and granted a new trial as to both principal and surety in the other case. From the last named order both principal and surety appealed with the result that the order was affirmed as to the principal and reversed as to the surety. School District No. 1 v. Aiton, 173 Minn. 428, 217 N. W. 496. Thereafter the judgments appealed from were entered.

The United States Fidelity & Guaranty Company claims "that there are no questions involved in this appeal which were not considered and decided by this court in its prior decision." It is settled that, where an order denying a new trial has been affirmed on appeal, all questions that might have been raised therein are set at rest and cannot be raised on a subsequent appeal from the judgment. Schleuder v. Corey, 30 Minn. 501, 16 N. W. 401; Tilleny v. Wolverton, 54 Minn. 75, 55 N. W. 822; Hibbs v. Marpe, 84 Minn. 178, 87 N. W. 363. We fail to see why the same rule is not applicable to a reversal on appeal of an order granting a new trial, based on a motion attacking the several findings of fact and conclusions of law, when there is a subsequent appeal from the judgment entered pursuant to the reversal of the order granting a new trial. Plaintiff in the former appeal could urge in support of the order every favorable inference to be drawn from the record. It could claim that the findings of fact assailed were insufficiently sustained, or that justice required another trial and that therefore the court rightly exercised judicial discretion, or it could point to errors of law justifying a new trial. But plaintiff now says that Judge Freeman granted a new trial solely on the ground that the findings of fact did not support the conclusions of law, and that he failed to exercise the judicial discretion he possessed upon other matters presented by the motion because he considered he lacked power to determine whether findings of fact made by the trial judge were supported or the evidence was so deficient that in the interests of justice another trial should be had.

That a trial court in a given matter has failed to exercise the judicial discretion possessed cannot be assumed or left to inference but must be clearly disclosed by the record. Judge Freeman's

ability and long service on the bench repel the conclusion that he was unaware of the extent of his powers or that the eminent counsel who appeared in this case failed to remind him thereof. Without the consent of all the parties he had no right to amend the findings of fact (Bahnsen v. Gilbert, 55 Minn. 334, 56 N. W. 1117) ; but he had the right to amend the conclusions of law so as to order the judgment called for by the findings of fact; and if any fact found was not sustained by the evidence or there was no finding as to an essential fact required to support the judgment ordered, which fact was in issue and litigated, he possessed the power to grant a new trial. In so doing he was to give weight to the superior advantage of the trial judge as stated in Reynolds v. Reynolds, 44 Minn. 132, 46 N. W. 236. See also Hughley v. City of Wabasha, 69 Minn. 245, 72 N. W. 78; Price v. Churchill, 84 Minn. 519, 88 N. W. 11; Noonan v. Spear, 125 Minn. 475, 147 N. W. 654. Upon the former appeal and in the petition for reargument plaintiff urged that Judge Freeman misconceived his powers, and it particularly stressed that there was no finding upon the issue litigated whether or not Aiton's negligence or unfaithfulness was also a proximate cause of the loss to plaintiff or a contributing cause. Hence every argument that could be made in support of the order granting a new trial was made, and after due consideration determined against plaintiff. We hold that these questions cannot again be raised on appeal from the judgment subsequently entered.

In respect to the appeal in the Maryland Casualty Company's case, plaintiff is in position to raise every question presented by its motion for a new trial, there having been no appeal from the order. There appears to be no judgment entered in favor of Mr. Aiton, and hence this appeal concerns only the judgment in favor of the surety. Judge Freeman based his denial of a new trial chiefly if not wholly upon the fact that the findings show that during the time the bond of this company was in force there was paid out for plaintiff by the treasurer, Mr. Aiton, from the deposits then made in this bank some $12,000 more than was received by the bank during that time. There is no evidence of any loss of plaintiff's moneys or funds

other than the $51,093.10 on deposit in this bank in question when it failed. We shall not determine this appeal upon the correctness of that view of the case by Judge Freeman (which was also the view of the trial judge) for we think there is one finding of fact, also found in the case of the United States Fidelity & Guaranty Company and held decisive there, which we regard as decisive of this appeal in the Maryland Casualty Company case. This finding reads:

"On the 30th day of September, 1924, said bank, being then insolvent, closed its doors, and no part of said $51,093.10 [then on deposit to the credit of plaintiff] has ever been repaid to said School District, although demand therefor was duly made on or about said 30th day of September, 1924, and said last mentioned sum has been lost to said School District as a proximate result of the failure of said bank to pay over said money on legal demand."

In the former decision it was held that Mr. Aiton could not relieve himself of the obligation to account for school moneys coming into his hands and deposited in a bank except under G. S. 1923, §§ 2836 and 2837, and that he could not do so under those sections because, being a member of the school board and also president of the bank, the designation of the bank as a legal depository of the school moneys was as to him invalid. Hence he was liable even if the deposits in that bank were made in good faith. Unless he could bring himself under the protection of the statute, he was liable to the school district irrespective of the bond.

But upon the record herein it was held that as to a surety on the treasurer's official bond the bank was a de facto depository, so that for school moneys deposited therein the surety was not liable under the terms of the bond. The theory of plaintiff that every deposit of school moneys in this bank was a conversion was rejected. The bank had given the bonds required by statute to make it a legal depository of school moneys, these bonds had been approved by the school board, and we held that, notwithstanding the antagonistic or dual capacity in which Mr. Aiton acted, the surety under the terms of that bond was not liable for the school

moneys deposited in the bank and lost through the failure of the bank. When a deposit was made in the bank the surety was relieved as long as it remained therein. The conditions of the Maryland Casualty Company's bond may be construed more favorably, if anything, to the surety than those in the United States Fidelity & Guaranty Company's bond. Under the authority of the former decision, that the bank was a de facto depository of school moneys, it would seem impossible to escape the conclusion that in this case also the loss of the money was the proximate result of the failure of the bank. This language used by the court in U. S. F. & G. Co. v. Title G. & S. Co. (D. C.) 200 F. 443, 448, seems appropriate here as to whether a wrongful deposit in a bank or the subsequent failure of the bank was the proximate cause of the loss of the money:

"The immediate cause of the loss in this case was not the way in which the money went into the bank, but the fact that it got out of the bank into hands other than those to whom it belonged. * * * All the illegal things which the treasurer is said to have done might have been done without causing any one to lose a penny, had the bank kept the money which he deposited with it and paid it to the state upon demand."

It is said plaintiff was entitled to a finding that Mr. Aiton knew or ought to have known the bank was unsafe when the moneys were deposited, and therefore his action was criminally negligent. As a bank officer he might have been criminally and civilly liable for receiving a deposit when the bank was in a precarious or failing condition. But we have been referred to no statute making it a crime to deposit money in a failing bank. There is no statute requiring a school treasurer to deposit the school funds in a bank or in a designated depository. The school board had not directed in which of the four designated depository banks its funds should be deposited. And it is difficult to discover how the surety can be held liable under the particular wording of this condition of the bond:

"The surety shall not be liable for any loss of public money deposited by or in behalf of the principal with any bank, depository or depositories, occasioned by the failure of such bank, depository or depositories to faithfully account for and pay over such money on legal demand; any law, decision or statute of the State of Minnesota or ordinances of the said School District No. 1 to the contrary notwithstanding."

That the loss of the school district funds deposited to the credit of the school district in this bank was occasioned by the failure of the bank cannot be doubted. Under the plain reading of the bond the surety is not liable for a loss thus sustained.

The judgments are affirmed.