# CITY OF MARSHALL v. H. O. GREGOIRE AND ANOTHER.[1]

Nos. 30,063, 30,064, 30,067.

January 4, 1935.

[1]Reported in 259 N. W. 377.

*Charles L. DeReu,* for plaintiff-appellant.

*Cobb, Hoke, Benson, Krause & Faegre* and *Loring M. Staples,* for defendants-appellants.

AFTER REARGUMENT.

Affirmed as to defendant Gregoire; reversed and new trial ordered as to defendant United States Fidelity & Guaranty Company.

STONE, JUSTICE.

Action against a city treasurer and his surety. After trial without a jury, there was decision for plaintiff against defendant Gregoire, the treasurer, for the full amount claimed, but against his surety, United States Fidelity & Guaranty Company, for a smaller sum. All the parties separately appeal from the judgment.

Marshall is a city of the fourth class organized under the general laws. 1 Mason Minn. 1927, § 1265, *et seq.* In 1926 defendant Gregoire became and has since remained its treasurer, having been annually reëlected by the council for successive terms of one year. The action is upon three fidelity bonds wherein defendant Gregoire is principal and defendant United States Fidelity & Guaranty Company is surety. The first bond bears date of April 24, 1930, and covers the term ending April 15, 1931. Its penal sum is $10,000. A similar bond in the same sum was furnished under date of April 16, 1931, covering Gregoire for the year's term ending April 15, 1932. Under date of May 8, 1931, defendant surety bound itself by another bond for Gregoire in the sum of $15,000. It was retroactive in that it covered Gregoire's term beginning April 15, 1931 (23 days before the date of the bond) and ending April 15, 1932.

Each bond was conditioned that Gregoire "as such treasurer shall well and faithfully perform all the duties of his said office." Each contained a provision reading thus:

"The surety shall in no way be held liable for any loss * * * caused by the failure of any bank, institution or depository of any kind to pay, deliver over or properly account for any money, monies,

papers, securities or property of any kind placed on deposit therein or in its custody by or for said H. O. Gregoire as such treasurer."

Gregoire deposited the city's funds in the Marshall State Bank, which went into liquidation April 29, 1931, nine days before the execution of the last or $15,000 bond. When it closed the city had on deposit $45,773.16. The city's claim against the bank was allowed as a general claim, and dividends had reduced the amount at the time of the trial to $24,787.16. Decision and judgment below went against defendant Gregoire for that sum, and against both himself and his surety, defendant United States Fidelity & Guaranty Company, for $10,000; that is, Gregoire was held for the entire sum, but his codefendant and surety was held only under the second bond for $10,000.

Gregoire was stockholder, director, and, as assistant cashier, a full time employe of the bank. It was never designated a depository of city funds by the city council. It never became even a *de facto* depository under the rule of School Dist. No. 1 v. Aiton, 173 Minn. 428, 217 N. W. 496. 1 Mason Minn. St. 1927, § 1327, not only gives the council of such cities as Marshall the power, but also imposes the duty, to designate depositories of city funds, requiring from them "good and sufficient bonds" for the safe-keeping and repayment of deposits. When funds are deposited in a depository so designated, the treasurer and the sureties on his official bond are exempted from liability for loss of funds so deposited. By § 1329 it is declared that the failure of the council of any city to designate a depository "shall not exempt or relieve the city treasurer of such city or the sureties on his official bond from any liability."

For both defendants it is argued that the common law liability of public officers for funds deposited by them is substantially that of a bailee for hire, and in consequence they are not liable for loss of such funds occurring without their fault. The doctrine of absolute liability, it is said, originated with United States v. Prescott, 3 How. 578, 11 L. ed. 734. There Prescott, a liable receiver of government moneys, was held for funds lost by theft without his fault. But see N. P. Ry. Co. v. Owens, 86 Minn. 188, 90 N. W. 371, 57

L. R. A. 634, 91 A. S. R. 336, which comes near, if not quite, to settling for us the rule of absolute liability.

That argument concludes that no absolute liability was put upon defendant Gregoire by statute, and none assumed by his bond. True, our statute as to the duty of a treasurer of a city organized under the general law (1 Mason Minn. St. 1927, § 1828-42), standing alone, might be construed not to impose absolute liability. It declares that "the treasurer shall receive all moneys belonging to the city, * * * keep accurate and detailed account thereof, in such a manner as the common council shall from time to time direct," and make specified reports to the council. It does not expressly impose any duty of repayment. Section 1828-35 requires from him a bond with "such penal sum and such conditions as the common council may deem proper." It is an anomaly that the statute does not in clear terms impose absolute liability upon the treasurer of cities organized under the general laws. Village treasurers must "safely keep" village funds. § 1174. Liability un-, conditioned for public moneys is at least assumed for all state and county officers by § 9687. Even as to treasurers of cities under the general laws, §§ 1327-1328 seem to imply the existence of absolute liability. They expressly exempt the treasurer from liability for loss of city's funds when caused by default of a depository properly designated. The assumption seems implicit that, without such express exemption, the treasurer would be liable even for loss caused by default of a properly designated depository. As far as mere "policy" is relevant, it seems to be, as declared by the legislature, that municipal treasurers of all kinds are under absolute liability. But we do not put decision on that ground. We simply invite attention to the condition of our statutory law as it is.

■ Another statute, § 10305, declares that "every public officer who shall be authorized * * * to make any contract in his official capacity, or to take part in making any such * * * contract * * * who shall voluntarily become interested individually in such * * * contract, directly or indirectly, shall be guilty of a gross misdemeanor." Except for its imposition of the penalty of crime, that statute but declares a rule which exists in-

dependently of statute, its force not lessened nor its scope restricted thereby. City of Minneapolis v. Canterbury, 122 Minn. 301, 142 N. W. 812, 48 L.R.A.(N.S.) 842, Ann. Cas. 1914D, 804.

That rule gives us all the law and all the "policy" needed to require decision against the initial and basic contention for both defendants that they are under no liability. We may adopt as hypothesis their claim that defendant Gregoire was not liable absolutely. We may and do assume, without so deciding, that the liability, if any, must be fixed by his bonds. Each of the three was conditioned that he should "well and faithfully perform all the duties of his said office." One of his most obvious duties, imposed by § 10305, was not to deposit any of the city's moneys in the Marshall State Bank, of which, as already mentioned, he was stockholder, director, and assistant cashier. His doing so was a "gross misdemeanor." Hence by the very terms of his bond, to which the argument for defendants seeks to restrict us, he is liable because the loss resulting from failure of the bank is directly referable to the violation of law committed by defendant Gregoire by his every deposit of city money in the bank. School Dist. No. 1 v. Aiton, 173 Minn. 428, 217 N. W. 496; *Id.* 175 Minn. 346, 221 N. W. 424. We add, in justice to Mr. Gregoire, that he was and remains innocent of intentional wrong. Unfortunately for him and his surety, that neither avoids nor lessens liability.

■ Leaving the argument which seeks to absolve both defendants, we consider one advanced for the surety alone. It is put upon the language of the bonds, which, literally, exempts the surety from liability for loss "caused by the failure of any bank, institution or depository of any kind" to repay city funds deposited with it. That provision, standing alone, without reference to the whole bond or its declared purpose, might relieve the surety. But as matter of either legal construction or plain sense, it cannot be so interpreted. That is because the literal meaning would lead to the absurdity of almost nullifying the whole bond. So construed, all any treasurer with such a bond would need to do, in order to relieve his surety from obligation, would be to put public money in his custody in any sort of a banking institution. The use of any unauthorized

depository, however negligent or wilfully wrong, would have that effect. Such a construction, even though the literal one, is not permissible when another is equally so and will give the bond the substantial effect and enable it to give the protection which obviously was intended.

It was the duty of the city council to designate a depository, or several of them, for city funds. The common and only proper practice is that depositories be so designated. In view of that background of statute and municipal practice, it must be and is considered that the bonds here in question, by exempting the surety from liability for funds in "any bank, institution, or depository," intended, pursuant to the statute, to exempt the surety only when the depository was properly designated as such.

■ The surety was considered below free from liability under the first bond, that of April 24, 1930. There is no finding of fact one way or the other to explain or support that conclusion. Whether the decision was put upon the ground that all moneys wrongfully deposited during the term of the bond have been withdrawn, or because the bank, not having closed until afterwards, it was thought that there was no loss during the term of the bond, is left to surmise. We cannot be sure of the facts, and it is not our office to determine what they are. The record discloses the deposit during the term of the, first bond of $10,000 of "plant fund" money, for which defendant Gregoire took a certificate of deposit. On the record, that deposit appears to have remained in the bank until its closing. If that be the fact, the surety, as well as the principal, is liable accordingly under the first bond. The truth remains to be determined by a new trial.

The reasoning for the surety that, inasmuch as the bank did not fail during the term of the first bond there was no loss thereunder, is unsound. The insurance of the bonds was against loss resulting from malfeasance of the principal. He was guilty of malfeasance during the term of the first bond. Each deposit was a violation of duty. That it was a continuing one as long as the wrongful deposit remained in the bank does not stop or lessen effect of the initial wrong. That fruition in inescapable loss did

not come until after the term of the bond does not alter the fact that malfeasance during that term was the proximate cause of loss. The subsequent closing of the bank was but the thing which prevented recoupment. The money departed, as far as the city was concerned, when it was deposited. That subsequent happenings made its return impossible cannot shear from the initial tort any of its appendages of liability.

Suppose that, instead of putting the money in the bank, Gregoire, during the term of the first bond, had wrongfully loaned it to some other borrower. The latter would be and remain liable. In the ultimate sense, there would be no loss unless he became execution-proof. But if he did become so after the term of the bond, could the loss, not until then inescapable, be so far divorced from the treasurer's wrongful act in making the loan as not to remain a proximate result thereof? Plainly not.

The treasurer's default was complete, even though loss was not yet unavoidable, when each wrongful deposit was made. The subsequent closing of the bank was no part of that default. It was but the thing which prevented recovery of the money. In a practical sense it was a cause of loss, but equally so was the wrongful deposit which was the primary and concurring cause. That is enough to fix responsibility upon the wrongdoer and his surety. If there had been an accounting by Gregoire at the end of the term of the first bond, he would not have been entitled, legally, to credit for moneys then wrongfully on deposit. In proportion to such deposits, he would have been a defaulter, to remain so until the money was returned to the city.

Of course "when funds are lawfully on deposit in a bank and the bank fails so that the depositor loses * * * such loss is caused solely by the failure of the bank." County of Marshall v. Bakke, 182 Minn. 10, 18, 234 N. W. 1, 5. In such a case the treasurer has but put the funds in his custody into a depository lawfully designated as such and where it was his duty to put them. Hence he is guilty of no malfeasance, which is the cause of loss. That is diametrically the opposite of this case, where we find de-

fendant Gregoire guilty of malfeasance resulting in the loss now sought to be recovered.

As to the wrongful deposits, defendant Gregoire and the bank were joint tortfeasors, guilty together of a conversion of the city's funds. Gregoire's participation therein, however innocent, was a violation of official duty. It is his surety's misfortune that it is bound for the resulting loss within the penalty of the bond. Having so insured against the wrong of one of the two tortfeasors, it certainly cannot escape liability simply because the other cannot pay. But its argument on this point comes to just that.

If there had been a surety for the bank, as depository, which had made good the loss, and that surety were now suing the treasurer's surety for subrogation, we would have a case like unto United States F. & G. Co. v. Title G. & S. Co. (D. C.) 200 F. 443. And, as there, it would be easy to deny subrogation on the ground that, as between the two wrongdoers, treasurer and bank, the latter's wrong was the primary cause of loss. In such case the bank's surety would lack that superiority of equity without which there can be no subrogation. How different is this case, where no equitable principles intervene and the surety, as matter of law, is answerable for a loss simply because it has insured against a wrong proximately causing the loss and without which there would have been none.

If any moneys deposited during the term of the first bond remained in the bank at its closing, judgment must go against the surety accordingly on the first bond. The fact question must be determined by another trial.

There must be a new trial also to settle the liability, if any, of defendant surety under the third bond, of May 8, 1931, in the penal sum of $15,000. Executed nine days after the bank closed, the finding is that the surety "had not been advised and had no knowledge of the said closing of said bank * * * that it was not intended, either by the plaintiff or the said" surety, that this bond should "apply to any of the money so deposited in said bank prior to its closing." That finding is not sustained. The expressly declared intention of the bond was to insure the treasurer's faithful

196

performance of his duties during his term beginning April 15, 1931. The bank was not closed until April 29. On its face, the bond was retroactive. Its reformation has not been asked for. As already stated, Gregoire violated plain duty by having or continuing any of the city funds in the bank. The surety's undertaking to answer for his violation of duty makes it liable for resulting loss. As the case is now, there is no ground for holding that the bond had any intention other than that expressed by its terms. There seems to have been no disclosure or other communication by the city in order to procure this bond. Apparently it was gotten by Gregoire on his own application. The surety charged and got the usual premium. It made no investigation. The issue of its liability under this bond must go back for a new trial. It cannot escape liability, we repeat, because of any construction of the bond which will relieve the surety from the consequences of the principal's violation of official duty. If it may avoid the bond, or liability thereunder, upon other grounds, it will have the opportunity of doing so.

In accordance with the views above expressed, the judgment will stand as to defendant Gregoire. It will stand also in so far as it imposes liability in the sum of $10,000 upon the surety under the second bond. If it should develop that the third bond, for $15,000, was but a larger substitute for the second bond for $10,000, the needed adjustment in the basis of liability will be ascertained and made below. Otherwise the judgment is reversed and the case remanded for a new trial (upon the present record and such additional evidence as may be offered and received) of the issues as to the liability of the surety under the first and third bonds.

So ordered.

AFTER REARGUMENT.

On March 22, 1935, the following opinion was filed:

STONE, JUSTICE.

Reargument has confirmed the views stated in the original opinion. We are charged with holding contrary to several cases. That is interesting, but neither as disconcerting nor as important as it

would be if we were accused of ignoring principles rather than decisions.

Quite naturally, the principal complaint is of our construction of the exception treated in subdivision number two of the opinion. The argument is for a literal construction so as to save the surety from liability for loss of moneys put into any kind of depository, however unlawful the choice thereof might be or however unfaithful the treasurer, principal in the bond, might have been in making the choice. There is no occasion for anything more than mention of the abundance of authority for the construction, not of contracts alone, but also of statutes and even constitutions, so as to accomplish the purpose of the document and avoid absurdity. In that process and to that end, literal meaning frequently suffers.

The argument for the surety insists on a blindfold against the light which is shed on the exception when the whole bond is applied to the subject matter. Every contract operates on matters extraneous to itself. So understanding of a contract is frequently difficult until it is considered in application to its subject matter. The contract here is concededly a fidelity bond—insurance bought and paid for by the city that its treasurer should in all things faithfully discharge his duties. Every deposit by him in the Marshall State Bank was a breach of fidelity. If the exception were literally construed, the bond would be rendered almost worthless, a result surely not intended.

But that is not all of the factual background. It was the duty of the city council properly to select a depository and to require from it the security demanded by the statute. In the situation so set up by statute and municipal practice, we find an obvious and legitimate field to be covered by an exception like that now in question. Giving the exception its full coverage over that field results in a reasonable construction, one not only permissible but proper when the whole bond is considered alongside its subject matter and in operation thereon. The literal rendition so strenuously argued for is much less reasonable and would go so far toward depriving the whole contract of any real value that we just cannot adopt it.

Now for the cases we are said to have ignored. They were not dealt with in the original opinion as perhaps they should have been, a situation which illustrates that it is sometimes a mistake to try to keep a judicial opinion within reasonable limits of bulk. The two cases of Murdo Township v. Townsend, 56 S. D. 576, 229 N. W. 935, and Thunder Hawk School Dist. v. Western Surety Co. 58 S. D. 312, 235 N. W. 921, may be considered together because the latter simply follows the former. In both, the defaulting depository had been lawfully designated.

A more important distinction is that in the South Dakota cases the exception (apparently with direct reference to the fact that in South Dakota depositories may be selected either by the governing body of the municipality or by the treasurer) declared that it should apply [56 S. D. 578] *"whether or not such banks or depositories were or may be selected or designated by the Principal or by other persons."* (Italics as in original.) So decision was inescapable that the exception included loss in any proper depository however selected.

The other case stressed for the surety is City of Portageville v. Fidelity & Cas. Co. — Mo. App.—, 63 S. W. (2d) 411. The court, in the absence of any controlling pronouncement from the supreme court of Missouri, followed the South Dakota decisions above considered and cited School Dist. No. 1 v. Aiton, 173 Minn. 428, 217 N. W. 496. The involved exception, of liability [63 S. W. (2d) 412] "for any loss of public money deposited * * * with any bank," was given its literal meaning. There is no suggestion that the deposits were other than lawful. So there is absent from that case the important feature, present here, that every deposit was a breach of fidelity by the principal. Had it been possible to show the Missouri court that each of the involved deposits was not only a breach of duty but also a violation of positive law, there might well have been a different result.

A written contract is little more than a scrap of writing save as it operates with legal effect on matters extraneous to itself. Construction deals with the dynamic rather than the static phase of the instrument. The question is not just what words mean

literally but how they are intended to operate practically on the subject matter. Thus, seemingly plain language becomes susceptible of construction, and frequently requires it, if ambiguity appears when attempt is made to operate the contract. Wilmot v. Minneapolis A. Trade Assn. 169 Minn. 140, 210 N. W. 861. This is such a case. The bond is fidelity insurance or it is nothing. It would be practically nothing if it did not cover the gross breach of duty which occurs under the statute when a municipal treasurer makes a deposit of public moneys which is prohibited by law. In a legal sense there is in such a case no "depository" but a mere receptacle.

In School Dist. No. 1 v. Aiton, 173 Minn. 428, 433, 217 N. W. 496, similar limitation of the liability of a surety upon a school treasurer's bond was construed "as relating only to a depository" properly designated pursuant to statute. Here, as there, it may be said "the surety's contract was made in reference to a depository" within the contemplation of the statute. The surety's contract was made in reference to a "legal depository." It is unthinkable that parties to such a contract, particularly public officers, would contemplate the unlawful rather than the lawful. We cannot suppose, therefore, that any of the language of Gregoire's bonds intended to deal with or provide for an illegal depository.

As to the other principal question, whether the wrongful deposits were a proximate cause of loss, what has already been said in support of our affirmative conclusion is either self-sustaining or its weakness so apparent that the statement is self-destructive.

There is nothing in our two decisions of the Aiton case, 173 Minn. 428, 217 N. W. 296, 175 Minn. 346, 221 N. W. 424, in conflict with our present views. The important thing there was that the bank, although not eligible to be a depository, had become one de facto and had furnished the security required by the statute, which was available to the school district. That explains the holding, in the district court, that the bank's failure, rather than the deposits, caused the loss. In urging that decision upon us so strongly counsel seem to forget that there we declined (173 Minn. 433) "to pursue this branch of the case" because consideration of it was not

necessary to a decision. When the Aiton case was here the second time, it was said (175 Minn. 350-351) "the theory of plaintiff that every deposit * * * was a conversion was rejected." Why? Simply because, "when a deposit was made in the bank the surety was relieved as long as it remained therein." This case is diametrically the opposite at that point because Gregoire's every deposit was a conversion and he was not "relieved." In School Dist. No. 13 v. Nissen, 177 Minn. 479, 480, 225 N. W. 444, the statement that "the loss to the district resulted solely from the failure of the bank" was true only in the same ultimate sense that it is here; that is, if the bank had not failed there would have been no loss. It was not meant otherwise.

We adhere to our original decision except as now to be indicated. The judgment will stand as against defendant Gregoire. The case will go back for a new trial of all the issues raised by the defense of the surety, United States Fidelity & Guaranty Company, subject, of course, to the views expressed in this decision. On the reargument some question was made as to the extent of the liability, in amount, under each of the three bonds. The facts necessary to settle that issue need to be found. As yet they have not been, and it is not our function to ascertain what they are. We take it that not much new evidence will be needed.

The case will be remanded for further proceedings not inconsistent with this decision.

So ordered.