**AMERICAN SURETY CO. OF NEW YORK v. FIRST NAT. BANK OF ASHLEY.**

**No. 1132.**

District Court, M. D. Pennsylvania.

Aug. 22, 1936.

Welles, Mumford, Stark & McGrath, of Scranton, Pa., and J. M. Magee and E. W. Arthur, both of Pittsburgh, Pa., for plaintiff.

Thomas F. Farrell, and M. F. McDonald, both of Wilkes Barre, Pa., and Reese H. Harris, of Scranton, Pa., for defendant.

WATSON, District Judge.

This is an action in equity. In the bill filed by the plaintiff, it is alleged, inter alia, that one Thomas Henichek, Jr., was from 1918 to 1929 tax collector for Ashley borough, for the school district of Ashley borough, and for the county of Luzerne in Ashley borough; that the plaintiff was the surety on all of the bonds furnished by Henichek which he was required to furnish as tax collector; that Henichek deposited tax money which he collected in the bank of the defendant; that the defendant discounted notes for Henichek at thirty days to the amount of $25,000, deposited the proceeds in the account designated "Thomas Henichek, Jr., Tax Collector," in the defendant bank; that, when the notes became due, the bank received payment thereof by charging the notes to the account of "Thomas Henichek, Jr., Tax Collector"; that the defendant permitted Henichek to divert to his own use $1,632.20 by honoring checks upon the account of

"Thomas Henichek, Jr., Tax Collector"; that, at the time Henichek ceased to be tax collector, he was short in his accounts with the borough of Ashley, school district of Ashley, and county of Luzerne, in the sum of $36,193.73; that the plaintiff, the surety, paid to the borough of Ashley, school district of Ashley, and county of Luzerne in full satisfaction of said shortage said sum of $36,193.73; that, by reason of said payments, the plaintiff is subrogated in equity to the rights of said borough, county, and school district to recover from the defendant the sum of $25,000 which it received from the account of Thomas Henichek, Jr., tax collector, in its bank in payment of the notes of Henichek, and the sum of $1,632.20 which the defendant permitted Henichek to divert to his own use. The plaintiff prays in its bill for a decree directing the defendant to pay to the plaintiff the sum of $26,632.20, with interest.

The defendant filed an answer to plaintiff's bill, and the matter came on for hearing.

From the evidence, the court finds the following facts:

(1) Thomas Henichek, Jr., was elected tax collector of Ashley borough in 1918, qualified as such, was later twice elected, and continued uninterruptedly in office until 1929, when, although elected to that office, he failed to qualify.

(2) As borough tax collector, he also had the duty, under the law, of collecting state and county taxes for the county of Luzerne, and did so until 1929, when he failed to qualify.

(3) As borough tax collector in like manner, he had the duty of collecting school taxes for the school district of the borough of Ashley, and did so down to and including the year 1929.

(4) On September 13, 1918, Thomas Henichek, Jr., opened an account in the defendant's bank in the name of "Thomas Henichek, Jr., Tax Collector."

(5) Thomas Henichek, Jr., deposited in the said account tax moneys collected for the borough, school, poor, and county and state.

(6) The defendant bank had actual knowledge that Thomas Henichek, Jr., was the tax collector, and that he deposited money in said account which he collected on account of taxes by authority of his office.

(7) During the years that Thomas Henichek, Jr., was tax collector for the borough of Ashley, the First National Bank of Ashley was treasurer of the borough of Ashley or W. A. Edgar was treasurer of the borough of Ashley.

(8) Thomas Henichek, Jr., on October 19, 1928, executed a note for $3,000, payable one month after date, to the order of W. A. Edgar, which was indorsed by W. A. Edgar. Thomas Henichek, Jr., and his wife, Eleanor Henichek, executed a note October 20, 1928, for $15,000, payable one month after date to the order of the First National Bank of Ashley, which was indorsed by Michael Pollock and P. H. Clarke. Thomas Henichek, Jr., executed a collateral note on October 20, 1928, for $7,000, payable one month after date to the order of the First National Bank of Ashley, and delivered as collateral 60 shares of Union Savings Bank & Trust Company stock, 5 shares of Liberty State Bank & Trust Company stock, and $700 par value Liberty bonds. All of said notes were discounted by the defendant, the First National Bank of Ashley, October 23, 1928, and the proceeds thereof placed in the account of "Thomas Henichek, Jr., Tax Collector."

(9) On November 19, 1928, the defendant bank charged the notes against "Thomas Henichek, Jr., Tax Collector," and, by so doing, received the amount thereof or $25,000.

(10) Deposits made in said account of "Thomas Henichek, Jr. Tax Collector," between November 9 and November 19, 1928, were proceeds of taxes collected for 1927 and 1928.

(11) On September 24, 1927, Thomas Henichek, Jr., as principal, and the plaintiff as surety, furnished a bond to the commonwealth of Pennsylvania in the sum of $20,000, conditioned that Thomas Henichek, Jr., shall well and truly collect and pay over, account for according to law, the whole amount of taxes charged and assessed in the duplicates furnished to him as tax collector for the year 1927.

(12) On October 24, 1928, the same parties furnished a bond to the commonwealth of Pennsylvania in the sum of $30,000, conditioned the same covering the tax duplicate for 1928.

(13) On November 20, 1929, the same parties furnished a bond to the school district of the borough of Ashley in the sum

of $35,000, conditioned that Thomas Henichek, Jr., will well and truly collect and pay over, or account for according to law, the whole amount of taxes charged and assessed in the duplicates which shall be delivered to him, etc.

(14) At the time the loans were made by the bank to Thomas Henichek, Jr., Henichek had on the duplicates for the year 1926 and 1927 uncollected tax charges amounting to $39,154.94, which fact was then known to W. A. Edgar, who was at that time cashier of the defendant bank and treasurer of the borough of Ashley.

(15) W. A. Edgar passed upon the loan of $25,000 made to Thomas Henichek, Jr., caused the proceeds to be deposited in the account of "Thomas Henichek, Jr. Tax Collector," and knew that the notes were to be paid out of that account at maturity.

(16) John M. Jones was the general agent for the plaintiff, and W. A. Edgar was his subagent, at the time the bonds involved in this case were furnished, and for several years prior thereto.

(17) John M. Jones was informed by W. A. Edgar that the loans were to be made to Thomas Henichek, Jr., and that the uncollected duplicates in Thomas Henichek, Jr.'s hands amounted to $39,154.94, and that the making of the loans would clean up the 1927 duplicate and enable Thomas Henichek, Jr., to take up the 1928 duplicate.

(18) John M. Jones received and cashed a check on November 9, 1928, signed "Thomas Henichek, Jr. Tax Collector," for $555 for the premium on the bond for 1928, on which bond the plaintiff was surety.

(19) John M. Jones received a check dated December 29, 1927, for $480, signed "Thomas Henichek, Jr.," made to the order of American Surety Company of New York for premium on surety bond. Said check was indorsed "American Surety Company of New York, by John M. Jones, Attorney in Fact," and was paid by the bank on which it was drawn on January 3, 1928.

(20) Thomas Henichek, Jr., failed to account for and turn over $340.54 of the duplicate delivered to him for the year 1927.

(21) Thomas Henichek, Jr., failed to account for and turn over $23,039.14 of the duplicate turned over to him for the year 1928.

(22) Thomas Henichek, Jr., failed to account for and turn over $8,373.11 of the duplicate turned over to him for the year 1929.

(23) The plaintiff paid to the borough of Ashley $340.54 and $4,440.94; to the county of Luzerne $23,039.14; and to the school district of the borough of Ashley $8,373.11.

(24) The plaintiff received from property turned over to it by Thomas Henichek, Jr., or from liens assigned to it, $7,603.15, which reduced plaintiff's payment as surety to $28,590.58.

(25) John M. Jones was general agent of the plaintiff from 1918 to the time of his death in about 1933. W. A. Edgar was subagent for John M. Jones for ten years prior to the death of John M. Jones.

(26) John M. Jones received applications for surety bonds from the plaintiff, passed upon the risks, received the premiums, delivered the bonds, and, on the expiration of the bonds, he passed upon the risk for the next year, delivered the bond for the next year, and accepted the premium on the next year's bond.

(27) For many year prior to 1928, John M. Jones represented the plaintiff in arranging for the furnishing each year of tax collector's bonds with the plaintiff as surety.

(28) The defendant made the following loans to Thomas Henichek, Jr.: 1924, $6,000; 1925, $8,000; 1926, $12,500; 1927, $18,000—all for the purpose of clearing the duplicates for the previous years, and all with the knowledge of John M. Jones, and all with the knowledge of W. A. Edgar.

(29) On October 3, 1928, the council of the borough of Ashley, at a regular meeting, adopted the following resolution: "That Harry W. Kreidler, President of the Town Council, and Charles E. Keck, Borough Solicitor, meet with Mr. John M. Jones, Agent of the American Surety Company, and ascertain what procedure is necessary in order to collect balance due from Tax Collector through the Bonding Company, provided that Tax Collector does not settle at once."

(30) There is no evidence in support of the claim of the plaintiff as to the sum of $1,632.20, which the plaintiff alleged defendant permitted Thomas Henichek, Jr., to divert to his own use.

The first question to be decided is, Did the plaintiff, the surety on the tax collector's bonds, become subrogated to the rights of the borough of Ashley, the school district of Ashley, and county of Luzerne, which I shall hereafter refer to as the "Municipalities"?

Assuming that the municipalities have causes of action against the defendant to recover back the money it collected from the bank account of "Thomas Henichek, Jr., Tax Collector," it does not follow that by paying the loss of the municipalities the surety on the tax collector's bonds became subrogated to the rights of the municipalities. The doctrine of subrogation has been adopted by courts of equity in order that justice may be done as nearly as possible. The application of the doctrine must depend upon the circumstances of each particular case. When, therefore, this surety company seeks to be subrogated to the rights which the municipalities may have had against the bank, the surety company must show that, as between it and the bank, if either must suffer loss because of Henichek's failure to collect and pay over, account for, according to law, the whole amount of taxes charged and assessed in the duplicates which were delivered to him, and to faithfully discharge the duties appertaining to the office of collector of taxes according to law in equity and good faith, the bank should be the one to lose. This is the rule recognized with practical unanimity. American Bonding Company v. Welts (C. C.A.) 193 F. 978; United States Fidelity & Guaranty Company v. Title Guaranty & Surety Company (D.C.) 200 F. 443. Does the evidence show such a state of facts? There is no evidence of wrongdoing on the part of the bank in loaning the money to Henichek and receiving it back when the loan was due. Persons or banks, when they loan money, have the right to expect its repayment at the time agreed upon. So far as the evidence discloses, the bank acted in good faith and was following a common custom, in loaning money to this tax collector at the end of the tax year, used by the tax collector to clear his duplicate for that year in order that he might take up the duplicate for the following year, a custom which was known to the surety and in which the surety acquiesced.

Some one must suffer for the failure of Henichek to do that which was required of him and for his misconduct. Shall it be the bank, which acted in good faith and parted with its money for the notes which it has now returned with the collateral security of bank stocks and Liberty bonds, or shall it be the surety company, which knew through its general agent of the loan and its purpose, part of which was to relieve the surety from settling Henichek's duplicate for 1927, and which, for a compensation, undertook to be responsible to the municipalities for Henichek's official delinquencies. In my opinion, to such a question a court of conscience should make but one answer.

The surety company has failed to show itself entitled to be subrogated to any rights which the municipalities may have had. For this reason, the bill should be dismissed.

### Conclusions of Law.

1. The evidence as to John M. Jones' authority to receive applications for surety bonds, pass upon the risks, receive the premiums, deliver the bonds, deliver new bonds upon the expiration of bonds already furnished, and the evidence as to the resolution of the borough council of Ashley borough October 3, 1932, in which it was stated that John M. Jones was the agent of the American Surety Company, which resolution was part of plaintiff's evidence, are sufficient for the finding that John M. Jones was the general agent of the plaintiff.

2. The acts of Jones, done within the apparent scope of the authority conferred upon him, were the acts of the plaintiff, and the knowledge of Jones obtained in the discharge of his duties was the knowledge of the plaintiff.

3. Jones having employed Edgar as a subagent to solicit, the acts of Edgar have the same effect as if done by Jones.

4. The plaintiff having failed to show that, as between it and the defendant, it is the defendant and not it who in equity should bear the loss, the plaintiff did not become subrogated to the rights of the municipalities.

5. The plaintiff failed to show that the defendant, and not it, should in equity bear the loss. The burden to show this was upon the plaintiff.

6. The plaintiff's bill must be dismissed.

Now, August 22, 1936, the bill is dismissed at the cost of the plaintiff.